**In re Thomas D. POWELL, Appellant.**

**In re Brian BROWN, Appellant.**

**No. 88–7041.**

United States Court of Appeals, District of Columbia Circuit.

July 15, 1988.

428

Thomas D. Powell, pro se.

Brian Brown, pro se.

1. Case No. 88–7041, *In re Thomas D. Powell.*

2. Case No. 87–5300, *In re Brian Brown.*

3. *In re Thomas Powell,* No. 87–7122 (D.C.Cir. Oct. 28, 1987) (unpublished order and memorandum).

Before WILLIAMS, D.H. GINSBURG and SENTELLE, Circuit Judges.

PER CURIAM:

These appeals arise from the district court's issuance of injunctions enjoining *pro se* appellants Thomas D. Powell[1] and Brian Brown[2] from filing claims without leave of the court. For the reasons set forth below, we reverse.

## I.

### Case No. 88–7041

As this is not the first time this court has reversed an injunction enjoining Powell,[3] we begin by reviewing Powell's previous encounter with an injunction.

Powell is a federal prisoner currently incarcerated at the Federal Prison Camp, Eglin Air Force Base, Florida. From September, 1985, until October, 1987, Powell filed twelve civil actions in the district court. Shortly after that period, when he attempted to file two additional Freedom of Information Act ("FOIA") complaints, the district court issued an order enjoining Powell from filing new claims without leave of the court. The district court found Powell's new filings were of a "similar magnitude and similarly, lacking in merit" to warrant issuing an injunction. Powell timely appealed and sought expedition and summary reversal.

To determine whether the district court properly issued the injunction, this court undertook a review of Powell's filings. Nine of the twelve cases already filed were FOIA matters, five of which were dismissed by Powell either voluntarily or by agreement with the defendants. The four remaining FOIA cases were at various stages of litigation in the district court. In addition, one civil action had been transferred by the district court to the Eastern District of Michigan, and on appeal, a *Bi-*

*vens*[4] action had been reversed and remanded to the district court for further consideration. Finally, a Privacy Act complaint, dismissed by the district court, was on appeal.

We also reviewed Powell's two new FOIA actions, which the district court had refused to file. One of the actions requested records concerning Powell's Swedish wife; the other requested information from the Securities and Exchange Commission ("SEC") concerning a public company called "Sound Advice."

On October 28, 1987, this court issued an order and memorandum granting expedition and reversing the district court's order.[5] *See In re Thomas Powell*, No. 87–7122 (D.C.Cir. Oct. 28, 1987) (unpublished order and memorandum). The court found that Powell's two new complaints were repetitive to the extent that they were FOIA actions and that Powell's action against the SEC concerned information also sought from other agencies in another FOIA suit. Nevertheless, the court was unable to characterize Powell's actions as frivolous, concluding that

> the record, however, does not suggest that Powell's claims have been without merit. Indeed, in one case, this court reversed and remanded to the district court Powell's *Bivens* action concerning the search of his home in Sweden under the alleged direction of U.S. officials. *See Powell v. Parsons*, No. 86–5463, slip op. at 2 (D.C.Cir. Feb. 23, 1987).

*Id.* at 5.

Following the issuance of this court's order, Powell refiled the two FOIA complaints at issue on appeal along with two new FOIA complaints. The first of these new actions requested information from the U.S. Customs Service concerning one Solomon Levy Abecasis. The second FOIA action requested information from the Department of Justice ("DOJ"), again with regard to Abecasis.[6]

The district court permitted the first three actions to be filed. When Powell attempted to file the fourth action, however, the district court reviewed all four of the cases in detail. *See In re Thomas D. Powell*, Misc. No. 87–199, Order at 3 (D.D.C. Jan. 7, 1988) (imposing an injunction on Powell). The district court determined that:

> [t]hree of the four [actions] concern persons other than the petitioner. They all disclose a similar pattern on the part of a petitioner, who is well versed in FOIA procedures and is not at all reluctant to invoke his procedural rights, including his insistence on the prompt processing of each application, however burdensome and oppressive. He has been careful, with extensive documentation, to show that he has exhausted his administrative remedies in every case. The complaints seek injunctive relief and follow the identical format of requesting a *Vaughn* index, an order enjoining defendants from improper withholding of records, costs and litigation fees.

*Id.* at 3–4 (footnote omitted).

In view of the recent filings, the district court examined the "totality of the circumstances involving the actions" of Powell. *Id.* at 4. The court concluded that "on their face they [Powell's FOIA actions] represent a form of harassment designed to impose excessive burdens of time and inconvenience not only on the executive agencies to whom the FOIA requests are directed, but also on the courts which are called up to process plaintiff's complaints." *Id.* The court observed further that in the context of Powell's "sixteen (16) filings in a period of seven (7) months," his last filing

---

**4.** *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**5.** At the same time, this court consolidated Case No. 87–7121, *In re George Laroque,* with *Powell* and granted Laroque's similar request for reversal of a district court injunction.

**6.** The district court's order issued January 7, 1988, stated that this action was filed against 15 components of the Department of Justice. *See* Powell's Motion—Exhibit E at 4. A reading of the complaint, however, reveals that Powell had requested information from 13 components at DOJ and sought judicial relief from only five of those components. *Id.* Exhibit D at Paras. 6 & 23.

"may well be a clear abuse of the judicial process which threatens 'the integrity of the courts and the orderly and expeditious administration of justice.'" *Id.* (quoting *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985) (per curiam)).

Accordingly, the district court denied Powell's Application For Leave to Proceed *In Forma Pauperis* with regard to his last complaint in the absence of compliance with a newly issued injunction. *Id.* at 4–5. Powell then noted a timely appeal from this order and requested expedited treatment of his motion for summary reversal.

### Case Nos. 87–5300 and 88–5097

Brown is a prolific *pro se* litigant presently incarcerated at the Lorton Reformatory. He filed seven separate civil actions in district court between April, 1986 and May, 1987.[7] Sometime prior to July 16, 1987, Brown attempted to file six additional complaints in the district court. The new complaints, in the district court's view, were "either identical to or similar to those previously filed."[8] *See In re Brian Brown,* Misc. No. 87–246, Order at 1 (D.D. C. July 16, 1987). The court further determined, without elaboration, that Brown's new filings were "of a similar magnitude and similarly, lacking in merit, to warrant [issuance of] an injunction." *Id.* Brown filed a timely appeal, docketed as No. 87–5300.[9]

### II.

As the district court noted in both of its orders enjoining Powell and Brown, the court has an obligation to protect the "orderly and expeditious administration of justice." *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985) (per curiam). It is also true that, in acting to protect the "integrity of the courts," the district court judge may use injunctive remedies. *Id.* It is important, however, that in fashioning an appropriate remedy, the court take great care not to unduly impair a litigant's constitutional right of access to the courts. *Id.*

In *Urban*, this court was faced with a prolific *pro se* litigant who had filed sixteen complaints in the district court. Each complaint was dismissed by the district court as frivolous pursuant to 28 U.S.C. § 1915(d) (1982). We *sua sponte* consolidated the appeals and similarly dismissed the cases as frivolous. *Id.* at 1499. In addition, faced with the prospect of over 100 additional "meritless, fanciful claims," we enjoined Urban from filing "any civil action in this or any other federal court" without first obtaining leave to do so. *Id.* at 1499–500.

This court also held the issuance of an injunction to be appropriate in a case decided four years earlier. In *In re Green*, 669 F.2d 779 (D.C.Cir.1981), the *pro se* litigant had filed thirty-eight complaints in the district court, eighteen in one year. This court held that Green's abuse of the judicial process by frivolous and malicious filings required the issuance of an injunction. *Id.* at 787.

In its order imposing the second injunction in *Powell*, the district court noted that this court when it reversed Powell's earlier injunction, had held that "the filings do not rise to the level of abuse manifested in *Urban* and *Green*" and "are not cases in which 'the orderly and expeditious administration of justice' has been so impeded as to require injunctive relief." *In re Thomas Powell,* Misc. No. 87–199, Order at 2 (D.D. C. Jan. 7, 1988). The district court also observed, however, that because we had

---

7. These were the only civil actions that preceded the district court's July 16, 1987 order enjoining Brown from filing any future complaints. Since the issuance of the injunction, Brown has secured leave to file a number of additional complaints.

8. Because the complaints were rejected by the district court, there is no record of the allegations contained therein.

9. In a subsequent order filed on February 23, 1988, the district court rejected another complaint because the affidavit submitted along with the complaint failed to satisfy the court that the case "meets the spirit and tenure of our injunction." *See In re Brian Brown,* Misc. No. 87–246, Order at 1 (D.D.C. Feb. 23, 1988). Brown again noted a timely appeal, docketed as No. 88–5097.

failed to define an unacceptable "level of abuse," it was "left without guidance" in this area. *Id.*

In the hope that these two cases will provide some guidance, albeit limited in nature, we endeavor to review the parties' filings.[10] At the outset, we note that an order imposing an injunction "is an extreme remedy, and should be used only in exigent circumstances." *In re Oliver*, 682 F.2d 443, 445 (3d Cir.1982). As the First Circuit emphasized in affirming the imposition of a proscription against a litigious plaintiff, such injunctions should "remain very much the exception to the general rule of free access to the courts," and "the use of such measures against a *pro se* plaintiff should be approached with particular caution." *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980) (citation omitted).

■ In keeping with the exigent nature of injunctions and the caution required in issuing injunctions, the district court should endeavor to create an adequate record for review. *See, supra*, n. 10. If a *pro se* litigant is to be deprived of such a vital constitutional right as access to the courts, he should, at least, be provided with an opportunity to oppose the entry of an order restricting him before it is entered. *In re Oliver*, 682 F.2d at 446. Due process requires notice and an opportunity to be heard and the standard for measuring the adequacy of these procedural protections increases in proportion to the significance of the interest at stake. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ Additionally, when contemplating issuing an injunction, it is incumbent upon the district court to make substantive findings as to the frivolous or harassing nature of the litigant's actions. In making a determination as to the frivolousness of numerous actions, however, the district court should be careful not to review pending cases. While it may be appropriate to review a pending action for the limited purpose of determining whether the litigant has filed similar claims or for analyzing the prospective effect of the claims, it would be inappropriate to characterize pending claims as frivolous except to the extent that they are similar to ones already so characterized. In this way, the district court will be able to discern if the litigant is filing numerous, similar complaints, and whether the litigant is attempting to harass a particular adversary.

Similarly, the district court should make findings as to any pattern constituting harassment. Again, the district court should be careful not to conclude that particular types of actions filed repetitiously, *i.e.*, FOIA actions, in and of themselves warrant a finding of harassment. Instead, the district court should attempt to discern whether the filing of several similar types of actions constitutes an intent to harass the defendant or the court. Overall, the district court should look to both the number and content of the filings as indicia of frivolousness and harassment.

Having established a few basic guidelines for issuing an injunction in cases such as these, we now turn to the two cases before us.

### III.

■ Our review of Brown's filings reveals that of the seven civil actions pending before the district court at the time the injunction was issued, not one was adjudicated as frivolous. Five of the seven were

---

**10.** We note, however, that our review is severely hampered by the lack of a complete record. It is our understanding that when imposing or enforcing such an injunction, the district court does not retain any record or copy of the complaint sought to be filed. Consequently, in those cases in which the appellant does not attach copies of the unfiled complaints in the appeal, it is impossible for us to review them, and we are only able to review those cases filed prior to the district court order imposing the injunction. While Powell appended copies of his unfiled complaints for our review, Brown did not.

Consequently, in order to provide a more complete and accurate record for review, it would be helpful if the district court instituted procedures to retain copies of the unfiled complaints as part of the miscellaneous file in which the injunction is imposed.

still pending; the other two were dismissed, but neither pursuant to 28 U.S.C. § 1915(d).

*Urban* does not provide authority for the injunction issued in this case. Brown's filings, seven prior to the imposition of the injunction and thirteen in all, are not of the same magnitude and may not present the same obvious lack of merit evidenced by the complaints in *Urban.* The number of Brown's filings in the district court fall far short of the level of the *Green* filings— over 600 in federal and state courts, of which thirty-eight were in our district court alone; or the *Urban* filings, which consisted of sixteen separate district court cases comprising one consolidated appeal, twenty-eight separate appeals, and fifty motions in the appellate court alone. *See Urban,* 768 F.2d at 1498–99; *Green,* 669 F.2d at 781, 783.

The complaints filed by Brown, though repetitious, have not yet been found by the district court to be "irrational[ ]," "incoheren[t]," or to evidence a "complete lack of any substantive allegations," as were the complaints in *Urban. Urban,* 768 F.2d at 1499. Indeed, as mentioned, five of the seven complaints that predated the injunction were still pending at the time the injunction was imposed and, as such, could not have been reviewed for frivolousness in order to issue an injunction.

Consequently, we cannot say, on the present record, that Brown poses the same threat to the orderly administration of justice as did Urban, a litigant who had a "fanatical desire" to "flood" the court with "meritless, fanciful claims." *Id.* at 1499–500. Accordingly, we reverse the July 16, 1987 order enjoining Brown from filing a

civil action without first obtaining leave of the court. The order of February 24, 1988, denying Brown leave to file a complaint, is remanded for further proceedings consistent with this opinion.

## IV.

■ Powell's filings require a slightly more difficult analysis, since the bulk of his actions are FOIA cases. Because FOIA precludes consideration of the interests of the requester, *see Soucie v. David,* 448 F.2d 1067, 1077 (D.C.Cir.1971), it is exceedingly difficult to make a determination as to the frivolousness of the action from the face of the complaint. Nevertheless, our previous review of Powell's actions concluded that the cases could not be characterized as frivolous. *See, supra,* at 428–429 (of the nine FOIA cases previously filed by Powell, five were dismissed prior to a final adjudication and the other four cases were still pending and thus not subject to review on the merits for a determination of frivolousness). In addition, our review focused on Powell's three remaining cases. Two of these were civil rights actions—one was transferred to the Eastern District of Michigan and the other was reversed and remanded by a previous panel of this court. *See Powell v. Parsons,* No. 86–5463 (D.C.Cir. Feb. 23, 1987) (order and memorandum reversing the dismissal of a *Bivens* action concerning the search of Powell's home in Sweden under the alleged direction of U.S. officials). Powell's third suit at that time concerned a Privacy Act issue which had been pending on appeal and has since been resolved.[11]

We have again reviewed Powell's earlier actions and conclude no differently.[12] We

**11.** Initially, this court granted the defendants' motion for summary affirmance in part. *See Powell v. Department of Justice,* No. 86–5680 (D.C.Cir. April 20, 1988) (unpublished order) (affirming the dismissal of Powell's constitutional claims). More recently, however, we issued an order denying the remainder of the Bureau of Prisons' motion for summary affirmance. In addition, we *sua sponte* reversed the district court's judgment as it related to Powell's Privacy Act claims and remanded the case for further consideration. *See Powell v. Department of Justice,* No. 86–5680, Order at 1 (D.C.Cir. June 20,

1988) (to be published) (holding that "there [was] no legitimate reason for the Bureau of Prisons ("BOP") to refuse to amend a record already made public with regard only to [Powell's] correct residence address.") (citation omitted).

**12.** One of Powell's actions that had been pending, C.A. No. 86–1478, *Powell v. Bureau of Prisons,* was dismissed when Powell filed a motion for an order stipulating to the granting of the government's motion for summary judgment.

have also reviewed Powell's latest FOIA filings and cannot characterize these actions as frivolous. The district court has concluded anew, however, that these actions "on their face ... represent a form of harassment designed to impose excessive burdens of time and inconvenience not only on the executive agencies to whom the FOIA requests are directed, but also on the courts which are called up to process plaintiff's complaints." *In re Thomas D. Powell*, Misc. No. 87–199, Order at 4 (D.D.C. Jan. 7, 1988). Thus, the question turns to one of harassment, rather than frivolousness.

As the district court correctly observed, Powell appears to be well versed in FOIA litigation, exhausting his administrative remedies, requesting a *Vaughn* index and seeking appropriate relief. *Id.* at 3–4. Viewed in the "totality of circumstances," the district court concluded that these FOIA actions were, in fact, harassment. *Id.* at 4. Examined within the context of "sixteen (16) filings in a period of seven (7) months," the district court concluded that Powell's last filing "may well be a clear abuse of the judicial process which threatens 'the integrity of the courts and the orderly and expeditious administration of justice.'" *Id.* (quoting *Urban*, 768 F.2d at 1500).

The framework for our analysis of the harassment issue must be the number and content of Powell's filings and the effect of those filings on the agencies and the district court. If Powell's FOIA requests are oppressive and burdensome to the agencies to the point of harassment, then there must be some indication in the record supportive of such a conclusion. In this case, however, the record gives us no indication that the agencies believe that they are being harassed, or that would clearly support such a belief, and therefore, we cannot conclude that Powell's requests are perceived as burdensome and oppressive by the individual agencies.

While Powell's actions have been directed at a variety of executive agencies, it is not possible based on the record before us to determine whether these actions represent a pattern of harassment. In the future, we suggest that under circumstances such as these, the district court should consider issuing an order to show cause why it should or should not issue an injunction. *See In re Oliver*, 682 F.2d at 446. The agency or agencies could then respond and help create a record from which the district court could make a finding of a pattern of harassment. Such a determination, of course, is best left to the district court in the first instance.

We are also unable to conclude that Powell's sixteen filings are so clearly harassment of the district court as to warrant issuing an injunction. It appears from our review that Powell's sixteen · filings spanned a twenty-eight month period (from September, 1985 until December, 1987), not a seven month frenzy. Not unlike those of · Brown, the complaints filed by Powell, though repetitious to the extent that many are FOIA actions, have not been found by the district court to be "irrational[ ]," "incoheren[t]," or to evidence a "complete lack of any substantive allegations," as were the complaints in *Urban*. As in *Brown*, no complaint has yet to be dismissed as frivolous pursuant to Section 1915(d). Instead, as we have mentioned, Powell has had some limited success in his litigation, which suggests that there is some merit to his claims.[13] Consequently, these factors do not warrant a finding of harassment.

Powell's filings do suggest a litigious propensity, about which we are duly concerned, but on the present record we must conclude that the filings fall far short of the level of abuse of process manifested in *Urban* and *Green*. Although a litigant's litigiousness need not reach that level to

**13.** In five of those actions that have been dismissed, it appears that Powell himself sought or stipulated to dismissal. *See* C.A. No. 86–1476, *Powell v. Bureau of Prisons;* C.A. No. 86–1477, *Powell v. OSHA;* C.A. No. 86–2179, *Powell v. Criminal Division;* C.A. No. 85–2990, *Powell v.* *DOJ;* C.A. No. 85–2989, *Powell v. DOS.* We note these dismissals not as an indication of an intent or lack of intent to harass, but rather as possible indicia of a pattern of harassment that the district court could examine in order to make a finding on harassment.

trigger an injunction, the record here does not suggest a case in which the "orderly and expeditious administration of justice" has been so impeded as to require such an extreme sanction. *Urban*, 768 F.2d at 1500.

Moreover, mere litigiousness alone does not support the issuance of an injunction.[14] *See Ruderer v. United States*, 462 F.2d 897, 899 (8th Cir.) (per curiam), *cert. denied*, 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed. 2d 482 (1972). Both the number and content of the filings bear on a determination of frivolousness or harassment. Such a determination must be made with care; like the First Circuit, "[w]e expect that injunctions against litigants will remain very much the exception to the general rule of free access to the courts." *Pavilonis*, 626 F.2d at 1079. An injunction is an extreme sanction and should be imposed in only the most egregious cases. On this record, such a case is not before us. Accordingly, we grant Powell's motions for expedition and for reversal of the district court's order.

---

**14.** It is important to note that multiple filings alone cannot be a predicate to a finding of frivolousness.