**M.R. MIKKILINENI, Plaintiff,**

v.

**PENN NATIONAL MUTUAL CASUALTY INSURANCE CO. et al., Defendants.**

**Civil Action No.: 01–2287 (RMU).**

United States District Court,
District of Columbia.

June 9, 2003.

M.R. Mikkilineni, Washington, DC, pro se, for Plaintiff.

Pamela Anne Bresnahan, Elizabeth Treubert Simon, Vorys, Sater, Seymour & Pease, Washington, DC, for Defendant.

Robert Ernest Leidenheimer, Jr., U.S. Attorney's Office, Washington, DC, for Federal Defendant.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE DEFENDANTS' MOTION FOR AN ORDER PROHIBITING THE PLAINTIFF FROM FILING ADDITIONAL COMPLAINTS; GRANTING DEFENDANTS PENN AND DICKIE'S MOTION TO TRANSFER

## I. INTRODUCTION

After litigating numerous claims in Pennsylvania, Texas, and the Court of Federal Claims, *pro se* plaintiff M.R. Mikkilineni re-filed these claims—and a few new claims—in seven civil actions in this court. The instant action pertains to a contract between the plaintiff's corporation, Talasila, and the United States. This case comes before the court on the defendants' motion for an order prohibiting the plaintiff from filing any further complaints without leave of the court and on defendants Penn National Mutual Casualty Insurance Co. ("Penn") and Dickie, McCamey & Chilcote, Inc.'s ("Dickie") motion to dismiss for lack of venue or to transfer venue. After reviewing the records of this and other cases involving the plaintiff, the court determines that the plaintiff is a prolific litigant who recycles old claims when he is not satisfied with a court's orders, thereby harassing the defendants and abusing the judicial system. To protect the integrity of the courts and to prevent further harassment of the defendants, the plaintiff's filing of duplicative claims must stop. Accordingly, the court grants the defendants' motion for an order prohibiting the plaintiff from filing new complaints in this court without leave. Also, because the Western District of Pennsylvania has retained jurisdiction over many of the claims in the instant com-

plaint, the court transfers this action to that venue.

## II. BACKGROUND

Since November 1, 2001, the plaintiff has filed seven actions that are or were before this member of the court.[1] These claims relate to contracts between the plaintiff, his corporations Talasila and MRM Engineers, various state and private entities, and the United States. *See generally* Compls. in civil actions 01–2287, 02–0702, 02–0716, 02–0970, 02–1118, 02–1205, 02–2222. As the plaintiff explains in his complaints, in each action he seeks to litigate claims he has litigated and lost in other districts. *Id.* In this section, the court first provides facts relevant to the instant case. The court next provides facts relating to civil action 02–2222 because the evolution of that case exemplifies the plaintiff's habit of filing a new action when he does not receive the relief he desires in an existing action. Finally, to demonstrate the plaintiff's extensive history of violating court orders, the court provides a glimpse of the plaintiff's numerous cases in Pennsylvania and Texas.

### A. Civil Action 01–2287, the Instant Case

The plaintiff filed the instant complaint on November 1, 2001, and then filed a first amended complaint on February 8, 2002.

The plaintiff's first amended complaint ("complaint") alleges tort, contract, fraud, and civil rights claims relating to his company, Talasila, and defendants Penn, Dickie, and the United States.[2] *See generally* Am. Compl. ("Compl."). The subject matter of the complaint is work performed by Talasila pursuant to a contract with the United States ("the Project") that also involved defendant Penn, an insurer. *Id.* Defendant Dickie is a law firm that represented Penn in a lawsuit against the plaintiff and related to the Project. Penn & Dickie's Mot. to Dismiss or Transfer at 3 ("Penn's Mot.").

In his complaint, the plaintiff extensively details prior cases regarding the Project and the current defendants and explains that this action is very similar to the previous. *E.g.,* Compl. at 3–14; *see also* Penn's Mot. at 4, Ex. A at 1–2 (Order dated Nov. 26, 2001 (98–1978 W.D. Pa.)). The plaintiff also states in the instant complaint that on November 26, 2001, he, Talasila, Rupa Mikkilineni,[3] and Penn signed a consent order that (1) settled and dismissed two civil actions (98–1978 (W.D.Pa.) and 00–1378 (W.D.Pa.)) similar to the instant case, and (2) prohibited the plaintiff from filing related claims.[4] Penn's Mot. at 3–4; Compl. at 11.

The plaintiff also admits in his complaint that his previous actions are repetitive.

---

1. The plaintiff also filed civil action 01–0314 on February 2, 2001, but that case was not before this member of the court.

2. Although the plaintiff lists only the United States as the federal defendant, the plaintiff's description of the party, the United States, clarifies that his claims are against Department of Defense officials, Department of Justice officials, the judges who presided over his cases in the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Third Circuit, and these judges' law clerks. Am. Compl. at 3.

3. Rupa Mikkilineni was the attorney representing herself and Talasila in 98–1978, was a Talasila stockholder, and is the plaintiff's daughter. Penn's Mot. at 4, Ex. G at 7.

4. The order dismisses all claims in civil actions 98–1978 (W.D.Pa.) and 00–1378 (W.D.Pa.) with prejudice and holds the plaintiff liable for all costs and fees incurred by Penn for the lawsuits. Penn's Mot. Ex. A at 3–4. The order specifically states that the United States District Court for the Western District of Pennsylvania retains jurisdiction of the matters consolidated at 98–1978 (W.D.Pa.) and 00–1378 (W.D.Pa.). *Id.* According to Penn, the case at bar is the eighth

For example, the complaint states that one month after the United States Court of Appeals for the Federal Circuit affirmed the United States Claims Court's dismissal of his lawsuit against the United States for improper termination of the Project (civil action 97–439 (Fed.Cl.)), he simply re-filed the lawsuit (civil action 01–124 (Fed.Cl.)). Compl. at 4. The plaintiff further details that he filed a tort and civil rights claim against the United States (civil action 98–1043 (W.D.Pa.)), and then five months after the court's dismissal of that case, he re-filed the same claims (civil action 00–492 (W.D.Pa.)). *Id.* at 4–5.

On March 4, 2002, Defendants Penn and Dickie filed a motion to dismiss or transfer the complaint to the Western District of Pennsylvania. Defendant United States filed a motion to dismiss on August 9, 2002. On September 20, 2002, the plaintiff filed a second[5] amended complaint that the court ordered stricken ("October Order") because the plaintiff had filed no motion for leave to amend. Order dated Oct. 4, 2002. Also on October 4, 2002, the United States filed a motion to strike the second amended complaint and for entry of an order prohibiting the plaintiff from filing additional complaints in this court without leave. Defendants Penn and Dick-

ie joined in this motion on October 18, 2002.[6] On October 10, 2002, the court filed an order to show cause why the court should not prohibit the plaintiff from filing additional complaints without leave, which the plaintiff responded to on October 21, 2002. On October 11, 2002, the plaintiff filed a motion for leave to file his second amended complaint, failing to include the proposed amendment as an exhibit. On December 9, 2002, the plaintiff filed a motion for a hearing or deposition regarding the motions to dismiss or transfer.

### B. Civil Action 02–2222, A Related Action Before This Court

The plaintiff filed a new civil action in this court on November 12, 2002, five weeks after the court's October Order striking the plaintiff's second amended complaint filed without leave in this action. Compl. (02–2222) at 1;[7] Order dated Oct. 4, 2002. A page-by-page review of the stricken complaint in this action and the complaint initiating civil action 02–2222 shows that the two complaints are identical. Indeed, a comparison of the original signature page and the handwritten page numbers demonstrates that pages 2–30 of the complaint in civil action 02–2222 are simply a photocopy of pages 2–30 of the stricken complaint.[8] *Compare* 2d Am.

action relating to the defendants' involvement with the plaintiff and the Project. Penn's Mem. at 3.

5. The plaintiff incorrectly styled the second amended complaint as a first amended complaint.

6. Defendants Penn and Dickie filed a second motion asking the court to prohibit the plaintiff from filing additional complaints on April 2, 2003. Because the court granted this relief on March 31, 2003, Penn and Dickie's April motion is moot.

7. Because this opinion describes documents from a number of different civil actions, the court clarifies that all citations to the record of this case will include no civil action num-

ber, while citations to documents from other actions will include the relevant civil action number. Similarly, citations to documents or actions in courts other than this court (D.D.C.) will specify the relevant district.

8. In addition, a paragraph-by-paragraph comparison of the first amended complaint and the second amended complaint (that the court struck, but is now the complaint in civil action 02–2222) reveals that most of the content of the 02–2222 complaint is contained in the first amended 01–2287 complaint. *Compare* Compl. *with* Compl. (02–2222). The only differences are that the plaintiff reformatted the complaint, added recent facts, and added an additional federal defendant, "L.R. Mecham, Director, United States Courts." *Id.* Thus,

Compl. *with* Compl. (02–2222). Demonstrating his strategy, the plaintiff stated in a March 31, 2003 opposition to defendants Penn and Dickie's motion to dismiss, "Mikkilineni's present action at 02cv2222 is identical to his [second][9] Amended Complaint filed, but stricken at 01cv2287. For that reason, on 3/22/03, he requested the court to consolidate the two actions into one." Pl.'s Opp'n to Penn's & Dickie's Mot. to Dismiss (02–2222) at 2.

### C. Litigation Related to Pennsylvania

The plaintiff's actions in the United States District Court for the Western District of Pennsylvania, which involve defendants different from those in the instant case, also demonstrate the plaintiff's abuse of the judicial system. *E.g.,* Kimball's Mot. to Dismiss (02–0702) at 3–7, Exs. A–E.; Pittsburgh's Mot. to Dismiss (02–1205) at 2–4, Exs. A–D; Gibson's Mot. to Dismiss (02–1118) at 7–15. On March 29, 2000, in civil action 99–0104 (W.D.Pa.), the presiding judge dismissed the plaintiff's claims. Kimball's Mot. to Dismiss (02–0702) Ex. C (Order dated Mar. 29, 2000 (99–104J W.D. Pa.)). In the dismissal order, the judge also sanctioned the plaintiff pursuant to Federal Rule of Civil Procedure 11, ordering him to pay $2,175.75 to defendant Gallitzin Borough and $6,395.28 to defendant Kimball for their costs in defending the action. *Id.* On April 9, 2001, the Third Circuit affirmed the dismissal and award of sanctions. *Id.* Ex. D (Opinion dated Apr. 9, 2001 (00–3392 3d Cir.)). The Third Circuit explained, "... Mikkilineni once again ignored the dismissals of his many other civil actions ... we note that the Kimball defendants previously were sued [by Mikkilineni] in 1994 for these same events...." *Id.* Ex. D at 4. The court further stated, "There simply

was no legal or factual basis for this additional lawsuit." *Id.*

The Supreme Court is also acquainted with the plaintiff and his litigation related to Pennsylvania. The Court denied the plaintiff's petition for review of one of the earlier Third Circuit dismissals. In addition, the Court barred the plaintiff from filing further appeals under certain circumstances because "petitioner has repeatedly abused this Court's process." *Mikkilineni v. Gallitzin Borough,* 531 U.S. 804, 121 S.Ct. 281, 148 L.Ed.2d 6 (2000).

Furthermore, in civil action 02–1118, the plaintiff described his litigation in the Western District of Pennsylvania and stated that he had filed and re-filed his lawsuits, which involve only three or four separate contracts, about eight times. Pl.'s Opp'n to Gibson's Mot. to Dismiss (02–1118) at 3–4. In his complaint in civil action 02–1118, the plaintiff explains that the action is one of *many* that he or his corporation filed against the Gibson defendants. Compl. (02–1118) at 5, 24–25, 28, 30, 32, 38. The Gibson defendants similarly describe eight of the plaintiff's prior actions against them in the Western District of Pennsylvania. Gibson's Mot. to Dismiss (02–1118) at 7–11.

### D. Litigation Related to Texas

Civil action 02–0970, which was also before this court, involves claims that the plaintiff had previously filed in the Southern District of Texas. *See generally* Compl. (02–0970). An evaluation of the prior litigation in Texas reveals that on June 21, 1999, Judge Gilmore of the United States District Court for the Southern District of Texas sanctioned the plaintiff for filing "groundless federal and state law claims which were made in bad faith

---

another effect of the plaintiff's re-filing of this complaint is that he has two nearly identical *actions pending in federal court.*

**9.** The plaintiff incorrectly refers to the second amended complaint as his "first" amended complaint.

and/or for the purpose of harassment." Fed. Def.'s Mot. to Bar Pl. from Filing Additional Compls. Ex. A (Order dated June 21, 1999 (98–0944 S.D. Tex.)) ("Fed. Def.'s Mot."). In the same order, Judge Gilmore prohibited the plaintiff from filing *any* suit against the defendants ("the Texas defendants") without first obtaining leave of the court. *Id.*

On February 8, 2001, the plaintiff circumvented this prohibition by filing claims against the Texas defendants in this court in civil action 01–0314. Order dated May 1, 2001 (01–0314). On August 13, 2001, Judge Gilmore held the plaintiff in civil contempt for filing civil action 01–0314 in violation of her June 21, 1999 order. Fed. Def.'s Mot. Ex. F (Order dated Aug. 13, 2001 (98–0944 S.D. Tex.)). In the contempt order, Judge Gilmore again enjoined the plaintiff from filing any actions against the Texas defendants arising out of the claims described in civil action 98–0944 (S.D.Tex.) or 01–0314 without first obtaining written leave from the Chief Judge of the United States District Court for the Southern District of Texas. *Id.* at 2.

Violating Judge Gilmore's order a second time, the plaintiff filed civil action 02–0970 in this court, suing the Texas defendants and adding Judge Gilmore as a defendant. *See generally* Compl. (02–0970). Consequently, on February 7, 2003, Judge Hughes of the United States District Court for the Southern District of Texas conducted a hearing on Texas defendant City of Houston's contempt motion and subsequently ordered the plaintiff to dismiss 02–0970 with prejudice by noon on February 14, 2003, or be sanctioned with incarceration. Pl.'s Emergency Appeal to Enjoin the United States and for Appointment of Counsel (02–0970) Ex. "OCR" (4th Ex.) (Order dated Feb. 7, 2002 (98–944 S.D. Tex.)). Judge Hughes also ordered the plaintiff to reimburse defendant City of Houston for $25,000 in legal fees and costs, and to pay a $10,000 fine. *Id.*

On February 10, 2003, the plaintiff filed an application for a temporary restraining order and a preliminary injunction ("injunctive relief") in civil action 02–0970. The plaintiff asked this court "to stop Defendant United States & its agents … from arresting him…." Pl.'s First Application (02–0970) at 1. On February 14, 2003, this court denied the plaintiff's first application for injunctive relief. Refusing to accept this court's order, on March 2, 2003, the plaintiff filed a second application for injunctive relief that the court denied on March 3, 2003. On March 5, 2003, the plaintiff filed a third motion for injunctive relief, which the court denied on March 6, 2003. On March 6, 2003, the court also ordered the plaintiff to show cause why his motions for injunctive relief did not violate Federal Rule of Civil Procedure 11's prohibition of submissions presented with an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation. On March 10, 2003, the plaintiff responded to the show cause order and also filed a petition for a writ of habeas corpus—essentially a fourth motion for injunctive relief.

The Fifth Circuit has also attempted to stop the plaintiff's repetitive and redundant litigation. On February 10, 1999, the Fifth Circuit dismissed an appeal by the plaintiff as frivolous, warning the plaintiff about possible sanctions if his *other* pending appeals were also frivolous. Fed. Def.'s Mot. Ex. A (Order dated Feb. 10, 1999 (98–20430 5th Cir.)). Less than three months later, the Fifth Circuit dismissed another petition by the plaintiff as frivolous and sanctioned the plaintiff. *Id.* Ex. B (Order dated May 19, 1999 (98–20430 5th Cir.)). Subsequently, the Fifth Circuit re-ordered the plaintiff to pay the $105 sanction and barred him from filing any

documents or appeals until he paid the sanction. *Id.* Ex. D (Order dated July 12, 1999 (98–20430 5th Cir.)). Demonstrating once again his disregard for court orders, the plaintiff filed another appeal with the Fifth Circuit, which promptly dismissed the appeal because it violated the Fifth Circuit's earlier order. *Id.* Ex. E (Order dated Nov. 30, 1999 (99–20506 5th Cir.)). Still trying, the plaintiff filed yet another appeal with the Fifth Circuit that the Fifth Circuit dismissed as frivolous. *Id.* Ex. E (Order dated Apr. 30, 2002 (01–21086 5th Cir.)).

## III.  ANALYSIS

### A.  The Court Grants the Defendants' Motion for an Order Prohibiting the Plaintiff from Filing Additional Complaints without Leave

#### 1.  Legal Standard for Barring a Plaintiff from Filing Additional Complaints

■ A court may employ injunctive remedies when needed to protect the integrity of the courts and the orderly and expeditious administration of justice. *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985). Injunctive remedies may be appropriate when a plaintiff files complaints or motions that are frivolous, harassing, or duplicative of prior filings. *Id.* (issuing an injunction to prevent additional frivolous complaints); *In re Green*, 669 F.2d 779, 782 (D.C.Cir.1981) (upholding an injunction to prevent duplicative filings); *In re Visser*, 968 F.2d 1319, 1324–25 (D.C.Cir.1992) (prohibiting *pro se* plaintiff from filing further complaints without leave when he filed 11 repetitive and meritless complaints). The court should look to both the number and content of the filings to determine whether they are frivolous or harassing. *In re Powell*, 851 F.2d 427, 431 (D.C.Cir.1988). Further, in evaluating whether the filings constitute harassment, the court should consider the effect of the filings on the parties and the court. *Id.* at 433, 851 F.2d 427. In determining whether litigation is frivolous, the court should not comment on pending claims, though the court may review pending claims to determine whether they are similar to previously-filed complaints and whether the litigant is attempting to harass an adversary. *Id.* at 431.

■ In fashioning an appropriate remedy, the court must not unduly impair a litigant's constitutional right of access to the courts. *Id.* at 430 (reversing injunctions issued for two *pro se* and incarcerated plaintiffs); *Kaempfer v. Brown*, 872 F.2d 496, 1989 WL 45103, *1 (D.C.Cir. 1989). Before barring a plaintiff from submitting additional complaints, a court must (1) create an adequate record for review, (2) provide the plaintiff an opportunity to be heard on the issue, and (3) make substantive findings as to the frivolous or harassing nature of the plaintiff's filings. *In re Powell*, 851 F.2d at 431.

#### 2.  The Court Bars the Plaintiff from Filing Additional Complaints

■ Having reviewed many of the plaintiff's cases and numerous orders sanctioning the plaintiff and dismissing his actions, the court determines that the plaintiff refiles complaints and motions—regardless of laws and court orders prohibiting such behavior, even when the orders threaten fines or imprisonment whenever he is not satisfied with court orders, thereby harassing the defendants and abusing the judicial system. Consequently, an order barring the plaintiff from filing additional complaints without leave from the court is necessary to protect the integrity of the courts and to stop the plaintiff from harassing the defendants. *Urban*, 768 F.2d at 1500.

The court finds that the plaintiff has filed similar claims repeatedly. The plain-

tiff himself details the repetitive nature of his claims and admits to ignoring orders from other courts prohibiting him from filing additional complaints against certain defendants. Pl.'s Resp. to Show Cause Order at 1–5; Pl.'s Resp. to Fed. Def.'s Mot. at 4–5. For example, despite the dismissals and sanctions by the Western District of Pennsylvania, the Third Circuit, and the Supreme Court relating to the plaintiff's litigation in Pennsylvania; on April 12, 2002, the plaintiff re-filed the same claims in this district. *E.g.*, Compl. (02–702) at 9–21.

Similarly, the court finds that the plaintiff has demonstrated complete and blatant disregard for court orders. Following are a few examples of this behavior: First, the plaintiff filed civil actions 01–0314 and 02–0970 in violation of an order prohibiting him from filing additional complaints against the Texas defendants in civil action 98–0944 (S.D.Tex.). Fed. Def.'s Mot. Ex. A. Second, the plaintiff filed two different civil actions, 01–2287 and 02–2222, in violation of the consent order settling similar claims filed in civil action number 98–1978 (W.D.Pa.). Kimball's Mot. to Dismiss Ex. C. Third, the plaintiff filed an appeal in the Fifth Circuit in violation of the Fifth Circuit's own order. Fed. Def.'s Mot. Ex. E. Fourth, continuing to demonstrate his flagrant disregard for court orders, the plaintiff filed civil action 02–2222 in contravention of this court's October Order striking the first amended complaint in this action. Order dated Oct. 4, 2002; Compl. (02–2222). Fifth, when the plaintiff disliked the Texas order threatening to incarcerate the plaintiff if he did not dismiss 02–0970, he filed an application for injunctive relief in this court. Pl.'s Emergency Appeal to Enjoin the United States and for Appointment of Counsel (02–0970) Ex. "OCR". Sixth, when the plaintiff disliked this court's order denying his motion to enjoin the judge in Texas, the plaintiff filed three additional motions for injunctive relief—

filing a motion after each of the three orders denying the request for injunctive relief. Orders dated Feb. 14, 2002, Mar. 3, 2003, Mar. 6, 2003 (02–0970). Finally, despite court orders dismissing the plaintiff's prior claims, the plaintiff re-files the same claims. *E.g.*, Compl. at 4 5; Fed. Def.'s Mot. Exs. A–G; Penn's Mot. Ex. A; Pl.'s Resp. to Show Cause Order at 1–5; Pl.'s Resp. to Fed. Def.'s Mot. at 4–5; Kimball's Mot. to Dismiss (02–0702) Exs. C–E.

The court also finds that not only do the plaintiff's attempts to circumvent court orders and sanctions show contempt for the justice system, but they also harass the defendants by forcing the defendants to spend resources litigating previously-resolved claims. *Id.; In re Powell*, 851 F.2d at 431, 433. That the defendants feel harassed is evident from the defendants' motion to prohibit the plaintiff from filing additional complaints and from defendants Penn and Dickie's request for sanctions in their motion to dismiss or transfer. Fed. Def.'s Mot.; Penn's Mot. to Join Fed. Def.'s Mot.; Penn.'s Mot. at 7 n. 4, 12; *In re Powell*, 851 F.2d at 431.

To prevent further harassment of the defendants, and to protect the integrity of the courts, the court issued an injunction on March 31, 2003 that set forth conditions that the plaintiff must satisfy before filing additional complaints in this court. The injunction requires the following: Before filing any new complaints in the United States District Court for the District of Columbia, the plaintiff must seek and obtain approval from the Chief Judge of this court. To seek approval, the plaintiff must file a motion captioned "Application Pursuant to Court Order Seeking Leave to File." The motion must include a copy of the court's March 31, 2003 order, the proposed complaint, and any complaints, dismissal orders, and injunctions filed in cases with related claims or the same defendants.

The motion must also include certification by the plaintiff that the claims in the proposed complaint are new claims never disposed of on the merits by any federal court and not pending in any federal court. The plaintiff must also certify that the claims are not filed in bad faith. This injunction is an appropriate remedy because it follows specific guidance provided by the D.C. Circuit, it does not unduly impair the plaintiff's right of access to the courts, and the plaintiff's response to the court's show cause order failed to excuse his harassment of the defendants and his abuse of the judicial system. *Urban*, 768 F.2d at 1500; *Kaempfer*, 872 F.2d 496, 1989 WL 45103, at *1; *In re Powell*, 851 F.2d at 431.

## B. The Court Grants Defendants Penn and Dickie's Motion to Transfer the Case to the Western District of Pennsylvania

### 1. Legal Standard for Transfer to a Different Venue

■ "For the convenience of the parties and witnesses, in the interest of justice," a district court may transfer venue to any other district where the plaintiff could have brought the complaint. 28 U.S.C. § 1404(a); *McSheffrey v. Hawk–Sawyer*, 2003 WL 179850, *1 (D.C.Cir. Jan. 24, 2003) (stating that transfer to the district where a number of the relevant events occurred was appropriate) (citing 28 U.S.C. § 1391(b)(2), (e)(2)); *see also In re O'Leska*, 2000 WL 1946653, at *1 (D.C.Cir. Dec. 7, 2000) (adding that for complaints with multiple claims and defendants, the interest of justice supports a transfer of the entire complaint rather than splitting the complaint between two different venues). As the moving party, the defendant bears the burden of establishing that the transfer is proper. *Air Line Pilots Ass'n v. E. Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987). Generally, a strong presumption exists in favor of the plaintiff's choice of forum. *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, a transfer from the plaintiff's venue of choice serves the interest of justice when it would prevent a litigant from using one district court as a "safe haven" from the lawful orders of another. *In re Tripati*, 836 F.2d 1406, 1407 (D.C.Cir.1988) (transferring case to a district that had heard earlier cases by the plaintiff and barred the plaintiff from filing additional complaints without leave).

### 2. The Court Transfers the Case to the Western District of Pennsylvania

■ Defendants Penn and Dickie have moved the court to dismiss the complaint or transfer it to the Western District of Pennsylvania because that court has explicitly retained jurisdiction over claims against Penn that involve the Project. Penn's Mot. at 3–4. Penn and Dickie also argue that due to the plaintiff's violation of the Western District of Pennsylvania's related consent order, a contempt motion would be appropriate. Penn's Mem. at 7 n. 4. A contempt motion would be more appropriate in the Western District of Pennsylvania, however, because that court issued the consent order that the plaintiff contravened, and that court has the greatest interest in enforcing its order. The plaintiff responds that the Western District of Pennsylvania is an "impermissible" forum for his claims and "there is no hope for justice there after suffering nearly ten years at their hands." Pl.'s Opp'n to Penn's Mot. at 8.

The court determines that the claims in the instant action pertain to Penn's role in the Project and duplicate many of the claims advanced in the plaintiff's Western District of Pennsylvania cases. *E.g., compare* Compl. at 7–8 *with* Am. Counterclaim (98–1978 W.D. Pa.) at 1–4 *and* Am. Compl.

(00–1378) at 2–3. In addition, because "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District of Pennsylvania, that district is the most appropriate venue for this action. 28 U.S.C. 1391(b)(2); *In re O'Leska*, 2000 WL 1946653, *1.

The plaintiff's action also demonstrates that he is shopping for a new forum. The plaintiff filed the complaint in this matter and the complaint in civil action 02–2222 (which is almost identical to the complaint in this matter) in blatant violation of the Western District of Pennsylvania's consent order, which retained jurisdiction over cases regarding defendant Penn and the Project, such as the instant case. Penn's Mot. Ex. A. Consequently, to prevent the plaintiff from using this court as a "safe haven" from Pennsylvania's order, the court grants defendants Penn and Dickie's motion to transfer the instant action to the Western District of Pennsylvania. *In re Tripati*, 836 F.2d at 1407; *see also Prof'l Managers' Ass'n v. United States*, 761 F.2d 740, 744 (D.C.Cir.1985) (discussing Congress' disdain for forum shopping). In addition, because the interest of justice supports a transfer of the entire complaint as opposed to having the complaint heard in two different venues, the court transfers the entire complaint rather than only the claims against defendant Penn. *In re O'Leska*, 2000 WL 1946653, at *1.

## IV. CONCLUSION

For all these reasons, on this 9th day of June, 2003, the court grants defendant United States' motion for an order prohibiting the plaintiff from filing additional complaints without leave and grants defendants Penn and Dickie's motion to transfer the case to the Western District of Pennsylvania. An order directing the parties in a manner consistent with this Memoran-

dum Opinion was separately issued on March 31, 2003.