*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0744

ELLIOTTE P. COLEMAN, APPELLANT,

v.

CARRINGTON MORTGAGE SERVICES, LLC, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2014-CA-007956-R(RP))

(Hon. Robert R. Rigsby, Motions Judge)

(Submitted June 8, 2022                                        Decided March 28, 2024)

*Elliotte P. Coleman*, pro se.

*Daniel J. Pesachowitz* was on the brief for appellee.

Before BECKWITH and MCLEESE,* *Associate Judges*, and FISHER, *Senior Judge*.

BECKWITH, *Associate Judge*: Pro se appellant Elliotte Coleman appeals the

---

* Associate Judge AliKhan was originally assigned to this case. Following Judge AliKhan's appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge McLeese has been assigned to take her place on the panel.

Superior Court's orders (1) granting appellee Carrington Mortgage Services' motion for a prefiling injunction to require Mr. Coleman to seek preapproval before filing more pleadings in this matter and (2) denying Mr. Coleman's motion to lift the prefiling injunction. For the reasons stated below, we vacate the latter of these two orders and remand for further proceedings.

## I.

This case arises from a foreclosure battle between Carrington[2] and Carrington's debtor, Mr. Coleman.[3] After the trial court granted Carrington's motion for summary judgment and ordered foreclosure on Mr. Coleman's property, Carrington sold the property. In June 2019, the trial court ratified the sale, deemed it final, and closed the case. Despite the sale of his property and the closure of the case, Mr. Coleman continued to fight his foreclosure. Over the next fourteen months he filed five substantive motions requesting that the court vacate, alter, or amend its

---

[2] Carrington's predecessor-in-interest, Bank of America, was the initial creditor in this matter. Carrington was substituted as plaintiff in 2018 after it gained ownership over the judicial foreclosure action.

[3] Carrington opposes Mr. Coleman's inclusion in his appendix of several documents that are not part of the record on appeal. Mr. Coleman did not file a motion to supplement the record, D.C. App. R. 10(e), and we do not consider those portions of the appendix, *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 152 n.7 (D.C. 2000) (noting that facts outside the record are ordinarily not considered absent a motion to supplement the record).

judgment or that the trial judge recuse himself from the case. Mr. Coleman also sought relief in bankruptcy court (asking that it stay the foreclosure auction of his home), in the United States District Court for the Western District of North Carolina (seeking damages for alleged fraud and statutory violations), and in this court, where he appealed multiple trial court orders, including the denial of his motion to amend or alter the grant of summary judgment and the ratification of foreclosure sale. Neither the bankruptcy case nor the North Carolina case was successful. But the appeal before this court was: we vacated the trial court's judgment in favor of Carrington and remanded for further proceedings, determining that Mr. Coleman had "presented sufficient evidence to establish a genuine issue of material fact as to whether [Bank of America] and/or its successor, Carrington, were entitled to enforce the note and deed of trust." *Coleman v. Carrington Mortg. Servs., LLC*, Nos. 19-CV-0970, 20-CV-0572, Mem. Op. & J. at 3 (D.C. Aug. 24, 2021).

While Mr. Coleman's appeal to this court was pending, Carrington moved for a prefiling injunction, arguing that Mr. Coleman had "demonstrated a continuous pattern of vexatious litigation in an attempt to hinder and delay Carrington from enforcing numerous court orders." Mr. Coleman did not file an opposition. In granting Carrington's motion, the trial court applied the Second Circuit's five-factor test for determining whether a prefiling injunction is appropriate as set forth in *Safir*

*v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).[4] The court made the following findings: (1) Mr. Coleman appeared to have "abuse[d] the judicial process by bombarding the Court with frivolous and meritless filings";[5] (2) Mr. Coleman had filed motions making "the same arguments . . . over and over," which appeared to be nothing more "than a delay tactic and bad faith conduct"; (3) Mr. Coleman was not represented by counsel, "but his ability to navigate the courts in multiple jurisdictions and play legal checkers through his motions practice indicates he is an

---

[4] The five factors laid out by the Second Circuit are:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, . . . (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir*, 792 F.2d at 24.

[5] It is not entirely clear which of Mr. Coleman's filings the trial court found to be "frivolous and meritless." In the order's "Background" section, the court mentioned the five motions that Mr. Coleman filed following the court's June 17, 2019, grant of Carrington's Motion to Ratify Foreclosure Sale. But when analyzing the *Safir* factors, the trial court quoted Carrington's statement that Mr. Coleman had "filed over eight motions since judgment was obtained"—perhaps including motions filed in the time period between the grant of summary judgment and the ratification of the foreclosure sale. This unexplained discrepancy is not significant to our decision.

intelligent individual and fully aware of the implications and consequences of his actions"; (4) Mr. Coleman's filings had caused Carrington and the trial court to "unnecessarily expend[]" resources; and (5) a prefiling injunction was the "ideal sanction" because there was "essentially nothing left to address in th[e] case and should Coleman have a legitimate issue to bring before the Court, he need only ask the Court's leave to do so." Accordingly, the trial court barred Mr. Coleman from filing "pleadings in this case without first obtaining" the court's permission.

Shortly after a panel of this court ruled in Mr. Coleman's favor and remanded the case, Mr. Coleman moved to lift the prefiling injunction. He contended that because the case had been remanded for further proceedings, it was "just and proper" for the trial court to allow him to file pleadings without first obtaining approval from the court. In a written order, the trial court restated verbatim its previous analysis under *Safir* and—stating that "[n]othing ha[d] changed from the date of this [court's] Order granting the prefil[]ing injunction"—concluded that "the injunction must remain."

Mr. Coleman appealed (1) the trial court's prefiling injunction order and (2) the trial court's order denying Mr. Coleman's request to lift the injunction.[6]

---

[6] Although this is an interlocutory appeal and we generally lack jurisdiction

## II.

The trial court "has the discretion and the power to restrict a litigant who abuses the judicial system," and unless the court has abused that discretion, we will defer to its decision to impose a prefiling injunction. *Ibrahim v. District of Columbia*, 755 A.2d 392, 394 (D.C. 2000). Such deference is straightforward when the court has made substantive findings based on a full record. *See In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988) (per curiam) ("In keeping with the exigent nature of injunctions and the caution required in issuing injunctions, the district court should endeavor to create an adequate record for review."). We will not defer to the trial court, however, where the court relies on incorrect legal standards, fails to provide a valid reason for its actions, or states reasons that "do not rest upon a specific factual predicate." *In re D.B.*, 879 A.2d 682, 691 (D.C. 2005) (quoting *Johnson v. United States*, 398 A.2d 354, 364 (D.C. 1979)).

In *Ibrahim*, the trial court did not abuse its discretion in issuing a prefiling injunction where the court detailed the appellant's twenty-five claims in the Superior

over such appeals, D.C. Code § 11-721(a)(2)(A) gives this court jurisdiction to review interlocutory orders granting injunctions, like the prefiling injunction at issue here. To the extent Mr. Coleman raises arguments related to other orders or issues not before us on appeal, we decline to address them. *See Akassy v. William Penn Apartments Ltd. P'ship*, 891 A.2d 291, 302 (D.C. 2006).

Court, twenty-two petitions and motions in the U.S. Supreme Court, and thirty-three complaints in the U.S. District Court. 755 A.2d at 392-94. Ibrahim's filings were so burdensome that three other courts had already taken note: the Supreme Court had deemed him "a 'prolific filer' . . . in its decision withdrawing [his] in forma pauperis privilege"; the U.S. District Court for the District of Columbia had enjoined him from making future filings; and the U.S. Court of Appeals for the District of Columbia Circuit had lamented his "'profuse and meritless' complaints." *Id.* at 393-94.

In affirming a prefiling injunction in *Ibrahim*, we distinguished Ibrahim's abuse of the court system from the litigious but less-than-harassing behavior of the appellants in *Powell*. *Id.* at 393 (citing *In re Powell*, 851 F.2d at 434). In *Powell*, the court reversed two prefiling injunctions imposed upon two separate litigants. 851 F.2d at 434. Although one of the pro se litigants had initiated thirteen separate lawsuits in the trial court, the court concluded that he had not been shown to have "a 'fanatical desire' to 'flood' the court with 'meritless, fanciful claims.'" *Id.* at 432 (quoting *Urban v. United Nations*, 768 F.2d 1497, 1499-500 (D.C. Cir. 1985) (per curiam)). The court reversed the injunction against the other pro se litigant in part because at least some of his sixteen separate filings over a twenty-eight month period had "limited success . . . which suggests that there is some merit to his claims." *Id.* at 433.

Mr. Coleman's actions in this case look less like those of the litigant in *Ibrahim* and more like those of the litigants in *Powell*. Unlike *Ibrahim*, the record here indicates that Mr. Coleman filed only one lawsuit in the Superior Court, not twenty-five. *See Ibrahim*, at 392-93. In fact, regardless of how the court counts Mr. Coleman's post-judgment motions, *see supra* note 5, they remain only a fraction of the thirteen separate lawsuits or sixteen separate filings that the court found insufficiently burdensome to warrant a prefiling injunction in *Powell*. *See In re Powell*, at 432-33.

And unlike *Ibrahim*, the record here does not show that any other court has imposed a sanction on Mr. Coleman. This is not to say that a prefiling injunction is warranted only where a litigant has proven so universally burdensome that sister jurisdictions have imposed sanctions of their own. On the other hand, "mere litigiousness" does not, on its own, "support the issuance of an injunction." *Ibrahim*, 755 A.2d at 393 (quoting *In re Powell*, 851 F.2d at 434).

Here, like one of the litigants in *Powell*, Mr. Coleman has found some recent success on one of the very motions that the trial court seems to have found "frivolous and meritless." For example, in our 2021 decision in this case, we reversed the trial court's denial of Mr. Coleman's motion seeking to amend the court's orders granting summary judgment, ratifying the foreclosure sale, and denying Mr. Coleman's

motions to alter or amend those earlier orders after concluding that "Mr. Coleman presented sufficient evidence to establish a genuine issue of material fact as to whether [Bank of America] and/or its successor, Carrington, were entitled to enforce the note and deed of trust." *Coleman*, Nos. 19-CV-0970, 20-CV-0572 at 3. And although this court formally addressed only one of Mr. Coleman's trial court motions, our decision seems to give credence to arguments that Mr. Coleman raised in at least three other motions filed in the trial court.

In denying Mr. Coleman's request to lift the prefiling injunction, the trial court failed to acknowledge Mr. Coleman's success or consider whether that success should affect the court's determination of whether his filings were "frivolous," "meritless," or in "bad faith." Instead, the court relied exclusively on the *Safir* test.[7] A more accurate and specific factual predicate than what the trial court provided is required before the court deprives a litigant—especially a pro se litigant—of "such a vital constitutional right as access to the courts." *In re Powell*, 851 F.2d at 431.

---

[7] The factors from the *Safir* test that the trial court applied may be relevant, but this court has not adopted (or even cited) *Safir*'s multi-factor test when evaluating these injunctions. To the extent the Superior Court judges view the *Safir* test as governing, *see, e.g.*, *Whitehead v. Wickham*, No. 05-CA-3346, 2005 WL 2874975, at *3 (D.C. Super. Ct. Sept. 6, 2005) (stating that the court "must consider" the *Safir* factors), we have never said that is the law.

## III.

A prefiling injunction "is an extreme sanction and should be imposed in only the most egregious cases." *Id.* at 434. Where Mr. Coleman's filings were not exceptionally numerous, not the focus of other courts' efforts to enjoin more such filings, and not wholly unsuccessful, the trial court's denial of Mr. Coleman's motion to lift the injunction was an abuse of discretion.[8] For the foregoing reasons, we vacate that order and remand for further proceedings.

*So ordered.*

---

[8] Carrington argues that Mr. Coleman's appeal of the initial order granting the prefiling injunction is untimely because Mr. Coleman filed it well after the thirty-day limit under D.C. App. R. 4(a)(1). We need not address timeliness here, however, because our reversal of the trial court's denial of Mr. Coleman's *timely* motion to lift the prefiling injunction makes the matter moot.