# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 8, 2016          Decided August 5, 2016

No. 15-7045

UNITED STATES OF AMERICA, EX REL. STEPHEN THOMAS
YELVERTON,
AND
STEPHEN THOMAS YELVERTON,
APPELLANTS

v.

FEDERAL INSURANCE COMPANY,
APPELLEE

———

Consolidated with 15-7046, 15-7047

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:15-cv-00277)
(No. 1:15-cv-00208)
(No. 1:14-cv-02209)

———

*Stephen Thomas Yelverton*, *pro se*, argued the cause and
filed the briefs for appellant.

*Jeffrey L. Tarkenton* argued the cause and filed the brief
for appellees Deborah Marm and Phyllis Edmundson.

*Natalie S. Walker* argued the cause and filed the brief for appellees Federal Insurance Company, et al.

Before: SRINIVASAN, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: These consolidated appeals are the latest chapter in a long line of litigation over a bankruptcy settlement agreed to by the trustee whom the United States Trustee appointed to represent the bankruptcy estate. The debtor's numerous, frivolous challenges to the settlement led the district court to enter a pre-filing injunction barring him from filing any new civil actions in the district court without court permission. These cases present a question about the scope of that injunction: namely, does it encompass appeals to the district court from bankruptcy court? We conclude that, as written, the injunction does not cover those appeals with sufficient clarity, and that the district court thus erred in striking these three appeals for violating the pre-filing injunction. We nonetheless affirm the dismissal of two of the three appeals on the merits, and we remand for the district court to resolve the third one.

I.

In 2009, Stephen Yelverton filed for bankruptcy. The bankruptcy trustee entered into an agreement with Yelverton's sisters to resolve the disputed ownership of the family business, Yelverton Farms, Ltd. The settlement agreement negotiated by the trustee also settled Yelverton's various legal claims against his sisters, and the bankruptcy estate transferred its interest in the company to Yelverton's sisters in exchange for $110,000. Over Yelverton's

objections, the bankruptcy court approved the agreement. Yelverton exhausted all avenues to appeal the approval of that agreement, and both the district court and this court affirmed it. *See Yelverton v. Webster (In re Yelverton)*, No. 14-7147, 2015 WL 1606965, at *1 (D.C. Cir. Mar. 9, 2015).

Over the course of the bankruptcy proceedings, Yelverton filed "over 40 lawsuits, adversary bankruptcy proceedings, or appeals of the bankruptcy court's rulings," and within those lawsuits "over 150 motions, including over 50 motions to reconsider, vacate, amend, or obtain relief from a judgment or order." *Yelverton v. Webster (In re Yelverton)*, 526 B.R. 429, 430, 433 (D.D.C. 2014). In response to Yelverton's many frivolous challenges, the district court entered a pre-filing injunction against him on August 6, 2014. The injunction barred him from filing "any new civil action in [that] Court" without first receiving the court's permission. *Id.* at 435. This court upheld the pre-filing injunction. *Yelverton*, 2015 WL 1606965, at *1.

Meanwhile, Yelverton continued to file new actions in the bankruptcy court. First, on June 5, 2014, he filed a complaint against the trustee and his surety bond company for breach of fiduciary duty in agreeing to the settlement (adversary proceeding number 14-10014). The bankruptcy court dismissed that lawsuit. Second, on June 16, 2014, Yelverton filed a complaint against his sisters alleging a violation of the Racketeer Influenced and Corrupt Organizations Act and of the bankruptcy stay (adversary proceeding number 14-10024). The bankruptcy court dismissed that lawsuit too. Finally, on November 26, 2014, after entry of the pre-filing injunction, Yelverton filed an action against the surety bond company alleging fraud and breach of fiduciary duty based on the trustee's failure to provide information about the company (adversary

proceeding number 14-10043). The bankruptcy court dismissed that claim as a violation of the district court's pre-filing injunction and on the merits.

Yelverton appealed the bankruptcy court's dismissal of each of his three cases to the district court. He did not seek the court's approval under the pre-filing injunction. The district court dismissed those appeals as violations of the injunction. Yelverton now appeals.

## II.

We have already held that the district court acted within its discretion in entering the pre-filing injunction against the filing of new actions by Yelverton in that court without the court's permission. We now address whether the injunction covers an appeal to the district court of an action initially filed in the bankruptcy court. The district court concluded that its injunction barred Yelverton's appeals from the bankruptcy court in the cases now before us, and it accordingly dismissed his appeals for breach of the injunction without considering them on the merits. We review the district court's interpretation of its injunction de novo. *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Airlines, Inc.*, 849 F.2d 1481, 1485 (D.C. Cir. 1988).

The Federal Rules of Civil Procedure require that "[e]very order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). When the injunction pertains to "such a vital constitutional right as access to the courts," due process also calls for "notice and an opportunity to be heard." *In re Powell*, 851 F.2d 427, 431 (D.C. Cir. 1988). An injunction must "give adequate notice that

particular conduct was enjoined." *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1383 (Fed. Cir. 2007). To ensure that "an ordinary person reading the court's order [can] ascertain from the document itself exactly what conduct is proscribed," we resolve "omissions or ambiguities in the order" in favor of the enjoined party. Charles Alan Wright et al., 11A Federal Practice and Procedure § 2955 (3d ed. 2013); *see In re Baldwin-United Corp.*, 770 F.2d 328, 339 (2d Cir. 1985).

The injunction in this case requires Yelverton to obtain the district court's permission "before filing any new civil action in [that] Court." *Yelverton*, 526 B.R. at 435. We therefore must decide whether it is sufficiently clear that bringing a bankruptcy appeal to the district court qualifies as filing a "new civil action" in that court. Appellees suggest two interpretations of that language that would encompass Yelverton's bankruptcy appeals. First, they argue that his taking a bankruptcy appeal to the district court amounted to the filing of a new civil case in that court. Second, they contend that, because the bankruptcy court is itself a unit of the district court, Yelverton filed a new civil action in the district court when he initially filed each proceeding in the bankruptcy court. We find that neither of those arguments supports concluding that the pre-filing injunction covers bankruptcy appeals with adequate specificity.

First, it is insufficiently clear that a bankruptcy appeal amounts to a "new civil action" in the district court. To be sure, bankruptcy appeals are treated as civil cases rather than criminal cases. The local rules establish a dichotomy between civil and criminal complaints. *See* Local Civ. R. 40.2; Local Crim. R. 57.9. When a new civil case is opened, the complaint is entered on the docket along with a civil cover sheet. And those cover sheets list bankruptcy as a subcategory of "[g]eneral [c]ivil" cases. Civil Cover Sheet,

*Yelverton v. Fed. Ins. Co. (In re Yelverton)*, No. 1:15-cv-00277 (D.D.C. Feb. 19, 2015); Civil Cover Sheet, *Yelverton v. Marm (In re Yelverton)*, No. 1:15-cv-00208 (D.D.C. Feb. 11, 2015); Civil Cover Sheet, *Yelverton v. Webster* (*In re Yelverton)*, No. 1:14-cv-02209 (D.D.C. Dec. 24, 2014).

Although the district court's categorization of bankruptcy appeals as civil (rather than criminal) cases implies that bankruptcy appeals may be considered "civil actions" in some sense, there are important distinctions between the treatment of bankruptcy appeals and that of civil actions filed originally in district court. According to the Federal Rules of Civil Procedure, "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Bankruptcy appeals, however, are commenced by "filing a notice of appeal with the bankruptcy clerk." Fed. R. Bankr. P. 8003(a)(1). The bankruptcy clerk transfers the filing to the district court clerk, who dockets the appeal without any further filings by the debtor in the district court. Fed. R. Bankr. P. 8003(d). Thus, when Yelverton appealed each of these cases from the bankruptcy court to the district court, he filed nothing in the district court. In that light, we find it insufficiently clear that bringing a bankruptcy appeal to the district court constitutes "filing a new civil action" in the district court within the meaning of the pre-filing injunction.

We next consider whether, even if taking an appeal from bankruptcy court did not amount to filing a new civil action in the district court, the initial filings in the bankruptcy court themselves were the filing of a new civil action in the district court. It is true, as appellees observe, that the bankruptcy court is an arm of the district court. *See* 28 U.S.C. § 151. But that understanding necessarily cannot carry the day for appellees with regard to two of the three consolidated cases before us (case numbers 14-10014 and 14-10024): each of

those proceedings was filed in the bankruptcy court *before* entry of the pre-filing injunction. In the third case (number 14-10043), however, Yelverton initially filed the adversary proceeding in the bankruptcy court after the injunction. As to that case, consequently, we must consider whether the filing of that action in the bankruptcy court amounted to filing a new civil action in the district court for purposes of the injunction.

We find it insufficiently clear that, by prohibiting the filing of new civil actions "in this Court," the district court also barred the filing of new actions in the bankruptcy court. Although bankruptcy courts are units of the district courts, *see id.*, the district court's opinion and order unsurprisingly speak of the two courts as distinct entities, not as one and the same. For instance, the district court noted that the proceedings below "involve[d] appeals of three orders of the bankruptcy court." *Yelverton*, 526 B.R. at 430. And in describing Yelverton's filings before "various courts," the district court separately discussed his submissions in the "bankruptcy court" and in "this Court." *Id.* at 433. In setting out the terms of the pre-filing injunction, the district court specified that the injunction applied to new civil actions "in this Court." *Id.* at 435. If the court wanted to prohibit filings in bankruptcy court, it could have (and presumably would have) said so explicitly.

We are sympathetic to the district court's efforts to deal with what it described as "Yelverton's long history of vexatious and harassing filings" and resulting "abuse[] [of] the judicial process." *Id.* We are unable to find, though, that the court's pre-filing injunction encompassed with sufficient clarity Yelverton's bankruptcy appeals (or his initial filings in the bankruptcy court) before us in these consolidated appeals.

III.

While the pre-filing injunction did not apply with adequate specificity to these bankruptcy appeals, we exercise our discretion to consider whether the district court's dismissal of these appeals can be affirmed on the merits. "[W]e may affirm a judgment on any ground the record supports." *Jones v. Bernanke*, 557 F.3d 670, 676 (D.C. Cir. 2009). Because we review the bankruptcy court's decisions on questions of law de novo, *ALCOM Am. Corp. v. Arab Banking Corp.*, 48 F.3d 539, 539 (D.C. Cir. 1995) (per curiam), our standard of review would not vary if there were an intervening district court decision on the merits. The parties have presented arguments on the merits, and we have sufficient information to resolve the merits of two of the three consolidated appeals before us. We do so in an effort to avoid unnecessary delay and waste of judicial resources on remand. *See In re W.R. Grace & Co.*, 115 F. App'x 565, 568 (3d Cir. 2004). We lack sufficient information to resolve the third case (case number 15-7047, the appeal of bankruptcy proceeding 14-10014), however, so we remand that case for the district court to decide it.

A.

In case number 15-7046 (the appeal of bankruptcy proceeding 14-10024), we affirm the bankruptcy court's finding that Yelverton failed to state a claim against his sisters under the Racketeer Influenced and Corrupt Organizations Act (RICO) and for actions taken in violation of a stay. *See* Fed. R. Civ. P. 12(b)(6). We need not reach the bankruptcy court's other grounds for dismissal.

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities

of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A RICO violation involves four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (quotation omitted). A "pattern" for RICO purposes requires at least two related predicate acts committed within a ten-year period. *Id.* The statute lists a number of crimes as possible predicate acts, including mail fraud, wire fraud, and extortion. 18 U.S.C. § 1961(1)(B).

The bankruptcy court assessed each of Yelverton's eight alleged predicate acts in detail and found that none stated a claim under RICO, especially under the heightened pleading requirements for allegations of fraud. *Yelverton v. Marm (In re Yelverton)*, No. 14-10024, 2014 WL 7141938, at *10-*12 (Bankr. D.D.C. Dec. 12, 2014); *see* Fed. R. Civ. P. 9(b). Five of the alleged predicate acts involve his sisters' supposedly false allegation that his shares in the farm might be owned by a third party to whom he had pledged his shares as collateral for a loan. *Yelverton*, 2014 WL 7141938, at *7, *11. As the bankruptcy court concluded, Yelverton's sisters would not have committed fraud by questioning the ownership of his shares. *Id.* at *11.

The remaining three alleged predicate acts fare no better. Yelverton claims that one of his sisters "marr[ed]" the value of the family business, Yelverton Farms, by agreeing not to renew a lease of her land to the company. *Id.* at *12. But those facts do not demonstrate fraud: as the owner of the land, she had the right not to lease it. Yelverton next claims that his sisters made false representations about the value of Yelverton Farms during settlement negotiations, but he does

not plead these claims with the particularity required by Rule 9(b). *Id.* Finally, Yelverton claims that the trustee assigned to his bankruptcy case extorted his ex-wife to waive her marital claim to the estate, but that allegation does not involve Yelverton's sisters at all. *Id.* We therefore affirm the bankruptcy court's holding that Yelverton did not sufficiently plead the two predicate acts necessary to make out a claim under RICO.

We also affirm the bankruptcy court's dismissal of Yelverton's other claim in bankruptcy proceeding 14-10024, involving his sisters' alleged violation of an automatic stay imposed during the pendency of related litigation in North Carolina. As the bankruptcy court explained in detail, none of his sisters' actions violated the stay. *Id.* at *6-10. They were free to engage in settlement negotiations initiated by Yelverton's trustee and to defend themselves against actions filed by Yelverton. He therefore failed to state a claim for a violation of the stay. For these reasons, the bankruptcy court properly dismissed adversary proceeding 14-10024.

B.

We also affirm the dismissal of the claims in case number 15-7045 (the appeal of bankruptcy proceeding 14-10043). Yelverton claims that the United States Trustee's surety, the Federal Insurance Company, committed several species of fraud: fraudulent concealment, fraudulent misrepresentation, and constructive fraud. He also alleges that the surety breached a fiduciary duty by failing to disclose information. We affirm the dismissal of those claims because Yelverton's complaint does not allege the requisite elements of any of them. *See* Fed. R. Civ. P. 12(b)(6). Again, we need not reach the bankruptcy court's other grounds for dismissal.

First, the bankruptcy court correctly dismissed the claim for breach of fiduciary duty. Yelverton brought his claim only against the surety bond company, the Federal Insurance Company, not the United States Trustee. But the facts underlying his fiduciary-duty claim relate only to the United States Trustee. In particular, he contends that the Office of the United States Trustee gave him the incorrect name and address for the surety. Yelverton never alleges that the surety owed him a fiduciary duty or that the surety took any action that could violate such a duty. As the bankruptcy court noted in its opinion, Yelverton does not "establish[] a ground for liability on the part of the Trustee's surety based on alleged misconduct of the United States Trustee." *United States ex rel. Yelverton v. Fed. Ins. Co.* (*In re Yelverton*), No. 14-10043, 2014 WL 7212967, at \*3 (Dec. 17, 2014).

Second, we affirm the dismissal of the fraudulent-concealment claim. Fraudulent concealment requires proof of three elements: "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994) (quotation and alteration omitted). Yelverton makes no allegations sufficient to satisfy the first element, conduct designed to conceal wrongdoing. At most, Yelverton's complaint alleges that the United States Trustee provided erroneous information and failed to correct it. The complaint does not allege that the surety did anything at all, or even that the Trustee tried to conceal evidence of its own wrongdoing.

Third, we affirm the dismissal of the fraudulent-misrepresentation claim. Fraudulent misrepresentation requires: "(1) a false representation, (2) in reference to a

material fact, (3) made with knowledge of its falsity, (4) and with intent to deceive, (5) with action taken in reliance upon the representation." *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1036 (D.C. Cir. 1980). Yelverton's allegations do not satisfy those elements. He does not claim the surety itself gave him any false information. And even with respect to the Trustee, he does not claim the Trustee intended to deceive him or knew the information it gave him was false.

Finally, we affirm the dismissal of the constructive-fraud claim. Constructive fraud, like fraudulent concealment, requires that the defendant make a false representation in reference to a material fact with knowledge of its falsity. *See Himmelstein v. Comcast of the Dist., LLC*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012). Because these requirements overlap with the requirements for fraudulent misrepresentation, Yelverton's constructive-fraud allegations fall short for the same reasons as his fraudulent-misrepresentation claim. Because he failed to allege facts sufficient to make out any of his claims, the bankruptcy court properly dismissed adversary proceeding 14-10043.

\* \* \* \* \*

In sum, the district court erred in applying the pre-filing injunction to Yelverton's appeals from the bankruptcy court. We nonetheless affirm the dismissal of the appeals in adversary proceeding numbers 14-10024 and 14-10043 for failure to state a claim. With regard to adversary proceeding number 14-10014, we reverse and remand to the district court for further proceedings consistent with this opinion.

*So ordered.*