# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 16, 2023          Decided June 11, 2024

No. 22-7123

LARRY ELLIOTT KLAYMAN,
APPELLANT

v.

JULIA PORTER, ET AL.,
APPELLEES

———

Consolidated with 23-7120

———

Appeals from the United States District Court
for the District of Columbia
(No. 20-cv-3109)

———

Larry E. Klayman, *pro se*, argued the cause and filed the briefs for appellant.

Lide E. Paterno argued the cause for appellees. With him on the brief were *Preston Burton*, *Jackson Hagen*, *Mark J. MacDougall*, and *Caroline L. Wolverton.*

Before:  MILLETT and RAO, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

Concurring opinion filed by *Circuit Judge* RAO.

MILLETT, *Circuit Judge*:  In recent years, the District of Columbia Bar's Office of Disciplinary Counsel has initiated multiple disciplinary investigations and proceedings against attorney Larry Klayman.  In response, Klayman has brought a series of lawsuits against the District of Columbia Bar, the Office of Disciplinary Counsel, and individual D.C. Bar officials, alleging a variety of torts and constitutional claims. We have previously affirmed dismissal of several of those lawsuits.

In June 2020, the District of Columbia Court of Appeals ordered a ninety-day suspension of Klayman's license to practice law in the District of Columbia.  Employees of the Office of Disciplinary Counsel mailed notice of that suspension to other jurisdictions to which Klayman is admitted to practice law.  Two of those jurisdictions then initiated reciprocal disciplinary actions or investigations against him.

Klayman brought three lawsuits against the Office of Disciplinary Counsel employees and the Chair of the D.C. Board on Professional Responsibility, alleging that the notification letters amounted to tortious interference and abuse of process.  The district court dismissed Klayman's suits in full and entered a pre-filing injunction restricting Klayman's ability to file any related actions or claims for relief in any forum, state or federal.

Klayman challenges both the pre-filing injunction and the dismissal of his claims. We vacate the pre-filing injunction. We affirm on immunity grounds the district court's dismissal of Klayman's claims for damages, but we affirm in part and reverse in part the district court's dismissal of Klayman's claims for injunctive relief.

**I**

**A**

All members of the District of Columbia Bar are subject to the disciplinary jurisdiction of the D.C. Court of Appeals and its Board on Professional Responsibility. D.C. Bar Rule XI, § 1(a); D.C. CODE § 11–2502.[1] Accordingly, the Board has the power to "consider and investigate any alleged ground for discipline or alleged incapacity of any attorney * * * and to take such action with respect thereto as shall be appropriate[.]" D.C. Bar Rule XI, § 4(e)(1).

Members of the Office of Disciplinary Counsel ("ODC") prosecute attorney-discipline matters before the Board. *See* D.C. Bar Rule XI, § 6(a)(4). In that role, Disciplinary Counsel are empowered to investigate, prosecute, and dispose of all matters involving alleged attorney misconduct, *see id.* § 6(a)(2)–(4), and to "maintain permanent records of all matters processed and the disposition thereof," *id.* § 6(a)(6). D.C. Bar Rule XI provides that members of the Board and the ODC "shall be immune from * * * civil suit for any conduct in the course of their official duties." *Id.* § 19(a).

---

[1] All citations to D.C. Bar Rules refer to the Rules Governing the District of Columbia Bar in place during the time period relevant to this case.

Over the past several years, the ODC has investigated and sought discipline against Klayman multiple times. *See, e.g.*, *In re Klayman*, 282 A.3d 584, 587–590, 598 (D.C. 2022); *In re Klayman*, 228 A.3d 713, 715–717, 719–720 (D.C. 2020); Report and Recommendation of Hearing Committee Number Nine at 1–2, *In re Larry Klayman*, No. 18-BD-070 (D.C. Bd. Prof. Resp. Sept. 20, 2023).

Klayman, for his part, has repeatedly sued the District of Columbia Bar, the ODC, and individual D.C. Bar officials, alleging tortious conduct and constitutional harms arising from their proceedings against him. *See generally Klayman v. Fox*, No. 18-cv-1579, 2019 WL 2396538 (D.D.C. June 5, 2019); *Klayman v. Lim*, No. 18-cv-2209, 2019 WL 2396539 (D.D.C. June 5, 2019); Order, *Klayman v. Porter*, No. 2020-CA-000756-B (D.C. Super. Ct. Oct. 1, 2020); *Klayman v. Porter*, No. 22-cv-80642, 2022 WL 4229383 (S.D. Fla. Aug. 8, 2022); *Klayman v. Kaiser*, No. 21-cv-727, 2023 WL 8941317 (D.D.C. Jan. 23, 2023); *Klayman v. Porter*, No. 22-cv-953, 2023 WL 2496738 (D.D.C. Mar. 14, 2023).

We have previously affirmed dismissals of several of these suits. *See Klayman v. Kaiser*, No. 23-7020, 2023 WL 8890505, at *1 (D.C. Cir. Dec. 26, 2023); *Klayman v. Lim*, 830 F. App'x 660, 661 (D.C Cir. 2020); *see also Klayman v. Porter*, No. 23-7034, 2024 WL 137330, at *1 (D.C. Cir. Jan. 12, 2024).

As relevant here, in June 2020, the District of Columbia Court of Appeals accepted the Board's recommendation that the court suspend Klayman for ninety days for violating a conflict-of-interest provision in the District of Columbia Rules of Professional Conduct. *See In re Klayman*, 228 A.3d at 715; *see also* D.C. Rule of Professional Conduct 1.9 (Conflict of Interest:  Former Client).  Klayman challenged the order by

petitioning for rehearing and rehearing en banc. Both motions were denied.

While Klayman's rehearing petitions were pending before the D.C. Court of Appeals, ODC employees sent *ex parte* letters to courts to which Klayman is admitted that notified them of the suspension order. The employees did not copy Klayman on those communications.

Klayman alleges that, after receiving notice of the suspension, the U.S. District Court for the Northern District of Texas opened a reciprocal disciplinary case against him, directed the clerk to remove Klayman's electronic filing privileges, and ordered Klayman not to file any more cases in that court. Klayman further alleges that the Ninth Circuit issued an order to show cause as to why it should not issue reciprocal discipline.

**B**

Klayman filed three separate lawsuits against the ODC employees and Matthew Kaiser, the Chair of the Board, (collectively, "ODC Employees") in federal district courts in Texas and California. *See* Complaint, *Klayman v. Porter*, 20-cv-2526 (N.D. Tex. Aug. 26, 2020); Complaint, *Klayman v. Porter*, 20-cv-1014 (W.D. Tex. Oct. 2, 2020); Complaint, *Klayman v. Kaiser*, 20-cv-9490 (N.D. Cal. Dec. 31, 2020). In each suit, Klayman alleged that the ODC Employees were engaged in a politically motivated agenda aimed at removing him from the practice of law, *see* App. 3, 103, 207, and asserted that the *ex parte* letters tortiously interfered with his business relationships with his clients and constituted an unethical abuse of the attorney-discipline process, *see* App. 9–11, 109–111, 218–220. Klayman sought damages and, in one suit, an

injunction ordering the ODC Employees to provide him with copies of the *ex parte* letters. *See* App. 11–12, 111, 221.

The cases were transferred to the U.S. District Court for the District of Columbia and consolidated. The ODC Employees subsequently filed two motions relevant to this appeal. First, they moved for a permanent injunction that would, among other things, prevent Klayman from "filing any new action, complaint, or claim for relief against" the ODC Employees, the Office of Disciplinary Counsel, current and former employees of the Office of Disciplinary Counsel and the Board of Professional Responsibility, or any D.C. Bar officials "in any federal court, state court, or any other forum * * * without first making application to and receiving the consent of [the district court] and any other court where the litigation is proposed to be filed." App. 440. The ODC Employees argued that such an injunction was necessary because Klayman's "vexatious" and "meritless" motions and lawsuits imposed unjustified burdens on the parties and the court, and had "extract[ed] a substantial personal toll on the [ODC Employees] and their families[.]" App. 440 (quotation marks omitted).

The ODC Employees also moved to dismiss Klayman's consolidated lawsuits in full, asserting that the D.C. Bar Rules confer absolute immunity on ODC employees for their official actions. The ODC Employees further argued that the court should dismiss Klayman's request for injunctive relief based on *Younger* abstention, which generally obligates federal courts to abstain from enjoining ongoing state proceedings. *See Younger v. Harris*, 401 U.S. 37, 43–45 (1971); *see also*

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–435 (1982).[2]

The district court granted both motions in a single order.

To start, the district court entered a pre-filing injunction against Klayman. The court's order provided that:

> [W]ithout first making application to and receiving the consent of this Court or any other court where additional litigation is proposed to be pursued, [Klayman wa]s ENJOINED from:
>
> (1) filing, in any federal court, any new action, complaint, or claim for relief concerning any matter derived from [Klayman's] disciplinary proceedings which are the subject of this case as well as *Klayman v. Fox*, Civil Action No. 18-cv-1579; *Klayman v. Lim*, Civil Action No. 18-cv-2209; and *Klayman v. Porter*, No. 2020 CA 000756 B, and against the [ODC Employees]; their employer, the Office of the Disciplinary Counsel; current and former employees

---

[2] The ODC Employees also filed a motion for a preliminary pre-filing injunction in January 2022. *See* Defs.' Mot. for Interim Relief, *Klayman v. Porter*, No. 20-cv-3109 (D.D.C. Jan. 7, 2022), ECF No. 64. In June 2022, the district court entered an order enjoining Klayman from "filing any additional lawsuits based upon the previous and pending D.C. Bar proceedings against him" pending a final ruling by the district court on the then-pending motions in the case. Order, *Klayman v. Porter*, No. 20-cv-3109 (D.D.C. June 29, 2022), ECF No. 81. Klayman appealed, and we dismissed that interlocutory appeal as moot after the district court issued the permanent pre-filing injunction that is the subject of this appeal. *See* Order, *Klayman v. Porter*, No. 22-7094 (D.C. Cir. Dec. 2, 2022).

of the office of Disciplinary Counsel, the Board of Professional Responsibility; or any D.C. Bar officials; or

(2) serving or causing to be served any of the [ODC Employees] with a subpoena or any other instrumentality of civil discovery in any other legal proceeding concerning any matter derived from [Klayman's] disciplinary proceedings which are the subject of this case as well as *Klayman v. Fox*, Civil Action No. 18-cv-1579; *Klayman v. Lim*, Civil Action No. 18-cv-2209; and *Klayman v. Porter*, No. 2020 CA 000756 B.

App. 424 (formatting modified).

In imposing the pre-filing injunction, the court pointed to six of Klayman's complaints—including the three before it—that it characterized as raising "essentially identical claims of abuse of process regarding the [ODC Employees'] conduct in relation to [Klayman's] disciplinary proceedings[.]" App. 443. The court labeled those suits "frivolous[,]" "harassing[,]" and "well within the range that other members of th[e] court ha[d] deemed sufficiently numerous and repetitive to warrant a pre-filing injunction." App. 444 (quotation marks omitted). The court added that Klayman's "serial lawsuits [had] extract[ed] a substantial personal toll on the [ODC Employees] and their families[.]" App. 445–446 (quotation marks omitted). Finally, the district court found that Klayman "ha[d] a demonstrated record of filing baseless motions accusing judges * * * of bias and prejudice when they do not order the relief he seeks[,]" and had previously "engaged in abusive language" and "demonstrated disrespect and contempt" for the court. App. 446 (quotation marks omitted).

In addition to issuing the pre-filing injunction, the district court granted the ODC Employees' motion to dismiss Klayman's consolidated actions in full.

The district court held that the ODC Employees were entitled to absolute immunity from Klayman's damages claims. The court explained that the ODC Employees "perform quasi-judicial functions" and that "D.C. Bar Rule XI and D.C. Circuit precedent confer absolute immunity on the defendants as officials who act in a quasi-judicial capacity[.]" App. 450 (formatting modified).

The district court rejected Klayman's argument that the ODC Employees' actions in sending the *ex parte* letters fell outside of the scope of their duties. The court noted that D.C. Bar Rule XI permits ODC disciplinary counsel to "disclose information pertaining to proceedings resulting in informal admonitions to any court, [or] to any other judicial tribunal or disciplinary agency[.]" App. 452 (first alteration in original; quoting D.C. Bar Rule XI, § 17(c)). The district court reasoned that, "if the D.C. Bar Rules explicitly permit the disclosure of informal admonitions, then it stands to reason that the ODC would be permitted to disclose the fact of [Klayman's] suspension—a more serious sanction[.]" App. 452 (formatting modified). The court added that the *ex parte* letters accorded with the notice provisions of the American Bar Association's Model Rules for Lawyer Disciplinary Enforcement, and that "providing notice to other jurisdictions regarding relevant disciplinary action is the type of activity that is plainly within the general matters committed to the [ODC Employees'] discretion[.]" App. 453 (formatting modified); *see* App. 452–453.

The district court further ruled that Klayman's claims for injunctive relief were barred by *Younger* abstention. The

district court explained that *Younger* abstention generally obligates federal courts to abstain from deciding claims involving pending state-bar disciplinary proceedings "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" App. 454 (quotation marks omitted); *see* App. 453–454. The district court noted that there were at least four disciplinary proceedings pending against Klayman in the District of Columbia, and that Klayman's claims of tortious interference and abuse of process in the consolidated cases before it "stem[med]" from what Klayman alleged was the ODC Employees' "political persecution of him in both the closed and pending disciplinary actions." App. 454. The district court also found that Klayman's assertions regarding the ODC Employees' "purported political motivations" fell short of "a sufficient showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." App. 455–456 (formatting modified).

## C

Two months after the district court entered the pre-filing injunction, Klayman filed a new suit against the ODC Employees, this time in the Superior Court of the District of Columbia. *See* Complaint, *Klayman v. Sataki*, 2022-CAB-5235 (D.C. Super. Ct. Nov. 4, 2022). In response, the ODC Employees moved the district court to clarify that the pre-filing injunction encompassed Klayman's recently filed action and to order Klayman to dismiss the claims in that suit. *See* Defs.' Mot. for Clarification and Enforcement of Order Granting Defs.' Mot. for an Inj. Against Vexatious Litigation by Pl., *Klayman v. Porter*, 20-cv-3109 (D.D.C. Dec. 13, 2022), ECF No. 101.

In August 2023, the district court expanded its pre-filing injunction to prohibit Klayman from "filing, in any federal court, state court, or any other forum, any new action, complaint, or claim for relief concerning any matter derived from the plaintiff's disciplinary proceedings" without the advance approval of the district court or the "court where additional litigation is proposed to be pursued[.]"  Order at 8, *Klayman v. Porter*, 20-cv-3109 (D.D.C. Aug. 30, 2023), ECF No. 111.  The district court acknowledged that its prior injunction had "expressly limit[ed]" the pre-filing injunction to filings in federal court, *id.* at 3, but noted that the language in the accompanying memorandum opinion was not similarly circumscribed, *see id.* at 4.  Because of that "ambiguity" in the order's scope, the court declined to enjoin Klayman's Superior Court action and limited the expanded injunction to future filings.  *Id.* at 7; *see id.* at 6–7.

## II

The district court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction to review the order granting the motion to dismiss and granting the injunction under 28 U.S.C. § 1291. We have jurisdiction to review the August 2023 modification under 28 U.S.C. § 1292(a)(1).

We review *de novo* the district court's dismissal of Klayman's claims. *See Statewide Bonding, Inc. v. Department of Homeland Sec.*, 980 F.3d 109, 114 (D.C. Cir. 2020).  We review the district court's decision to issue or modify an injunction for abuse of discretion. *See Cobell v. Kempthorne*, 455 F.3d 301, 315 (D.C. Cir. 2006); *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 803 (5th Cir. 2018); *cf. United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432 (D.C. Cir. 2022) ("[W]e review a

district court's refusal to modify an injunction for abuse of discretion.").

## III

Klayman challenges both the pre-filing injunction and the dismissal of his complaints. We vacate the pre-filing injunction because Klayman's litigation does not meet the very high threshold for a nationwide restriction on a litigant's constitutional right of access to the courts. We affirm the district court's dismissal of Klayman's claims for damages on immunity grounds, but we reverse in part the district court's dismissal of his claims for injunctive relief because there was no relevant pending state proceeding to support *Younger* abstention at the time of the dismissal. We affirm on mootness grounds the district court's dismissal of Klayman's claims for injunctive relief against the now-former Board Chair Matthew Kaiser.

## A

Klayman first challenges the district court's decision to enter a pre-filing injunction. He raises both procedural and substantive challenges, arguing that (1) the district court erred by not conducting a full evidentiary hearing and by failing to articulate sufficient reasoning for the injunction; and (2) the ODC Employees did not meet the necessary standard for a pre-filing injunction.

We need not reach Klayman's procedural arguments because we agree that a pre-filing injunction was not warranted on this record. The handful of lawsuits on which the district court based its pre-filing injunction were not sufficiently prolific, frivolous, or harassing to warrant broadly restricting

Klayman's constitutional right of access to all courts and forums, state and federal.

**1**

It is "well settled that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (per curiam). Those remedies can include, in appropriate cases, pre-filing injunctions that restrict a litigant's ability to file certain actions without prior leave of the court.

Pre-filing injunctions, though, must be a tool of last resort and reserved for those rare and egregious cases in which the "frivolous or harassing nature" of a litigant's actions threatens the "administration of justice" or the "integrity of the courts[.]" *In re Powell*, 851 F.2d 427, 430–431 (D.C. Cir. 1988) (per curiam) (quotation marks omitted); *see In re Martin-Trigona*, 737 F.2d 1254, 1261–1262 (2d Cir. 1984) (pre-filing injunction issued to protect party's ability to participate fully in the litigation). Courts impose that high threshold because such injunctions can "unduly impair a litigant's constitutional right of access to the courts." *In re Powell*, 851 F.2d at 430; *see id.* at 431 ("[Pre-filing] injunctions should remain very much the exception to the general rule of free access to the courts[.]") (quotation marks omitted).

For that reason, we have upheld the "extreme remedy" of a pre-filing injunction only in "exigent circumstances." *In re Powell*, 851 F.2d at 431 (quotation marks omitted). For example, in *In re Green*, 669 F.2d 779 (D.C. Cir. 1981) (per curiam), a *pro se* litigant had "deliberately flooded" state and federal courts with 600 to 700 lawsuits over the course of a decade. *Id.* at 782; *see id.* at 781. As a result, we directed the

district court to enter a pre-filing injunction constraining the litigant from filing "any civil action without leave of court." *Id.* at 787. Similarly, in *Urban v. United Nations*, 768 F.2d 1497 (D.C. Cir. 1985) (per curiam), we entered a pre-filing injunction against a *pro se* litigant who had "flood[ed] the court with meritless, fanciful claims" against "a variety of real and imaginary government defendants[.]" *Id.* at 1498–1499. In entering the injunction, we determined that the litigant was on pace to file more than 100 appeals in this court in the coming year. *Id.* at 1499. Underscoring the court's "obligation to protect and preserve the sound and orderly administration of justice" from the institutional burden of a litigant with a "fanatical desire to flood the courts[,]" we enjoined the litigant from filing any civil action in a federal court of the United States without first obtaining leave of that court. *Id.* at 1500 (quotation marks omitted).

**2**

Klayman's six lawsuits are neither so prolific nor so frivolous or harassing in their content that they threaten the order or integrity of the courts' operations. Nor did the district court find that less draconian sanctions were unavailable or would not work. In addition, the district court did not find, and the record does not reflect, the type of egregious abuse of the judicial process that would be necessary to support enjoining litigation in *all other* courts and forums, state and federal.

First, the filing of six lawsuits across several jurisdictions does not, without more, provide a sufficient predicate for the extraordinary relief of a pre-filing injunction barring litigation in the courts within the D.C. Circuit. *See In re Powell*, 851 F.2d at 431 ("Overall, the district court should look to both the number and content of the filings as indicia of frivolousness and harassment."). Six lawsuits will rarely, if ever, threaten the

courts' ability to manage their dockets or disproportionately burden the courts' ability to operate efficiently and fairly. *See id.* at 432 (finding that litigant's thirteen filings did not pose a sufficient threat to the orderly administration of justice to warrant a pre-filing injunction). *Contrast United States ex rel. Yelverton v. Federal Ins. Co.*, 831 F.3d 585, 586–587 (D.C. Cir. 2016) (pre-filing injunction appropriate where, "[o]ver the course of the bankruptcy proceedings, [litigant] filed over 40 lawsuits, adversary bankruptcy proceedings, or appeals of the bankruptcy court's rulings, and within those lawsuits over 150 motions") (quotation marks omitted). Tellingly, the district court here made no findings that Klayman's six lawsuits confounded its docket management or otherwise obstructed the administration of justice.

Nor does the record support such a finding. Klayman's filings "fall far short of the level of the *Green* filings—over 600 in federal and state courts, of which thirty-eight were in our district court alone[.]" *In re Powell*, 851 F.2d at 432. And they are far more manageable than the filings in *Urban*, which included "sixteen separate district court cases comprising one consolidated appeal, twenty-eight separate appeals, and fifty motions in the appellate court alone." *Id.* Klayman's six suits in two years perhaps constitute an abnormally heavy flow of litigation, but they do not amount to an intractable flood. *Contrast Urban*, 768 F.2d at 1498–1499; *In re Green*, 669 F.2d at 781–783.

Second, the district court did not support its characterization of Klayman's suits as frivolous with "substantive findings[.]" *In re Powell*, 851 F.2d at 431. Klayman's lawsuits stop short of the pervasively frivolous and facially insubstantial character that has supported pre-filing injunctions in prior cases. *Contrast Urban*, 768 F.2d at 1499 ("[I]n his first visit to this court, Mr. Urban sought an

emergency stay of the second inauguration of President Reagan. Revealing himself at that time to be a self-proclaimed presidential candidate, Mr. Urban cited his residency in the Milkyway Galaxy as a jurisdictional basis for that action.").

Instead, the district court equated the repetitive nature of Klayman's filings with frivolity, pointing out that the six complaints contained "essentially identical claims[.]" App. 443. But the three consolidated cases that are the subject of this appeal do not simply replicate already-rejected claims.[3] *Contrast In re Green*, 669 F.2d at 782. As the district court acknowledged, the "consolidated cases include additional factual allegations concerning the [ODC Employees'] mailing of *ex parte* letters to notify other jurisdictions of [Klayman's] disciplinary actions," App. 444 (formatting modified), and involve legal claims about those notices that have not before been adjudicated. In other words, this case does not involve the type of voluminously "duplicative" lawsuits that we found warranted a pre-filing injunction in *Green*. 669 F.2d at 782.

Notably absent in the district court's frivolity analysis was a finding that Klayman's claims were, as a matter of law, "irrational" or "incoherent," or that they "evidence[d] a 'complete lack of any substantive allegations[.]'" *In re Powell*,

---

[3] We have previously explained that, "[w]hile it may be appropriate to review a pending action for the limited purpose of determining whether the litigant has filed similar claims or for analyzing the prospective effect of the claims," courts should not "characterize pending claims as frivolous except to the extent that they are similar to ones already so characterized." *In re Powell*, 851 F.2d at 431. Because the district court considered the three consolidated cases before it only for these limited purposes, *see* App. 443–446, we need not decide whether those cases—which the district court dismissed *after* analyzing whether a pre-filing injunction was appropriate— were "pending" at the time of the court's analysis.

851 F.2d at 432 (formatting modified) (quoting *Urban*, 768 F.2d at 1499). The district court did not, in other words, find they involved the "obvious lack of merit" that has supported pre-filing injunctions in the past. *Id*. This absence is particularly glaring since only one of Klayman's previously dismissed suits was arguably treated as frivolous by the dismissing court. *Compare Klayman v. Fox*, No. 18-cv-1579, 2019 WL 2396538, at *1 (D.D.C. June 5, 2019) (dismissing claims on *Younger* and immunity grounds and based on the *non sui juris* status of the ODC), *and Klayman v. Lim*, No. 18-cv-2209, 2019 WL 2396539, at *1 (D.D.C. June 5, 2019) (dismissing claims on *Younger* and immunity grounds, based on the *non sui juris* status of the ODC, and for failure to state a claim), *with Klayman v. Porter*, No. 2020-CA-000756-B, slip op. at 12–14 (D.C. Super. Ct. Oct. 1, 2020) (sanctioning Klayman for filing claims similar to those the U.S. District Court for the District of Columbia had twice dismissed).

Third, the district court did not find, and the record in these consolidated cases does not reflect, an "intent to harass" the ODC Employees or the courts. *In re Powell*, 851 F.2d at 431. Certainly nothing on the face of Klayman's complaints is, by its very nature, "oppressive and burdensome to the * * * point of harassment[.]" *Id.* at 433. Nor does the content of Klayman's filings show that Klayman's litigation goal is to burden the ODC Employees and the courts, rather than to seek redress of alleged legal grievances. *Contrast In re Green*, 669 F.2d at 782 n.8 ("The major goal of [Green's group] is to flood the courts with prisoner civil rights complaints. At some point, Green believes, the courts will 'cry uncle' and the prisoners (read: Green) will obtain early release in return for a promise to put away pen and paper.") (citation omitted); *In re Martin-Trigona*, 737 F.2d at 1261 (finding that litigant "used legal processes solely to harass parties to federal litigation, their counsel, judicial personnel and their families").

To be sure, the district court referenced what it considered to be harassing litigation that Klayman had aimed at the court system at other times. *See* App. 446 (commenting that Klayman "has a demonstrated record of filing baseless motions accusing judges * * * of bias and prejudice when they do not order the relief he seeks[,]" has engaged in "abusive language," and has "demonstrated disrespect and contempt for th[e courts]") (formatting modified). But the court did not elaborate on that point, and there is no indication that the six cases on which the district court grounded its pre-filing injunction were themselves purposely wielded as tools of harassment. *See* App. 442–447.

In short, although litigiousness need not rise to the level of abuse of process manifested in *Urban* and *Green* before a pre-filing injunction may issue, the record here does not show how the integrity of the court or the orderly and expeditious administration of justice "has been so impeded as to require such an extreme sanction." *In re Powell*, 851 F.2d at 434; *see id.* at 433–434.

Fourth, we recognize that repetitious lawsuits can take time and resources from those sued and the courts that adjudicate them. But those concerns must be balanced against the Constitution's protections of due process and access to the courts. *See* U.S. CONST. Amends. I, V; *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) ("[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").

And while pre-filing injunctions are the *last* tool in a court's tool chest, district courts have other tools available to them to address repetitive and unduly burdensome litigation. For example, the Federal Rules of Civil Procedure and

19

precedent allow the imposition of targeted sanctions or awards of attorney's fees to deter litigation abuses. *See* FED. R. CIV. P. 11(c); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53–54 (1991) ("The award of attorney's fees for bad faith * * * vindicates the District Court's authority over a recalcitrant litigant" and "compensates a private party for the consequences of a contemnor's disobedience.") (formatting modified); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (explaining that sanctions "penalize those whose conduct may be deemed to warrant such a sanction" and "deter those who might be tempted to such conduct in the absence of such a deterrent"). Those commonly employed and effective tools can deter misconduct while compensating other parties for unwarranted litigation burdens.

Imposing lesser sanctions before resorting to a pre-filing injunction protects against undue incursions onto a litigant's constitutional right of access to the courts "while preserving the court's ability to deter and punish abuses of the judicial process." *Shepherd v. ABC*, 62 F.3d 1469, 1479 (D.C. Cir. 1995); *see Cromer v. Kraft Foods N. America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (Courts must consider "the adequacy of alternative sanctions" before entering a pre-filing injunction.); *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986) (similar); *cf.* FED. R. CIV. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").

Yet, in this case, the district court neither tried alternative means of addressing any perceived improper litigation tactics nor explained why nothing else would work. There is no need to haul out a sledgehammer if a tack hammer will suffice.

Finally, in extending the pre-filing injunction to cover filings in *all* courts, state and federal, as well as "any other forum," the district court went too far. Order at 8, *Klayman v. Porter*, 20-cv-3109 (D.D.C. Aug. 30, 2023), ECF No. 111.

Courts must ensure that the breadth of any pre-filing injunction is commensurate with and necessitated by the extent of misconduct, harassment, or abuse. And courts should tread especially carefully when purporting to regulate access to other federal trial or appeals courts outside their circuit. Absent an exceptionally egregious abuse of the judicial process, courts should leave it to other jurisdictions to decide for themselves how best to address improper litigation before them. *See Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1344 (10th Cir. 2006) ("It is not reasonable for a court in this Circuit to speak on behalf of courts in other circuits in the country; those courts are capable of taking appropriate action on their own.").

Federal courts should exercise even more caution when enjoining access to state courts. Whatever the scope of federal courts' ability to address frivolous and harassing litigation that burdens their effective functioning, federalism principles "militate[] against extension of the terms of [such] injunction[s] to state courts." *In re Martin-Trigona*, 737 F.2d at 1263. After all, "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests." *Id.* Furthermore, the imposition of a pre-filing injunction can create work for and impose burdens on personnel in those state courts. Here, for example, the district court's order obligated judges on the other courts to expend time and resources prescreening filings and attempting to determine, at the very threshold of a case, their relationship to unfamiliar litigation that occurred in a distant forum. *See* Order at 8, *Klayman v. Porter*, 20-cv-3109 (D.D.C. Aug. 30, 2023), ECF No. 111 (enjoining Klayman from filing

"any new action, complaint, or claim for relief concerning any matter derived from [Klayman's] disciplinary proceedings which are the subject of this case as well as [three other cases]" without the consent of the relevant court).   Federal courts should be loath to restrict access to state courts or to unilaterally impose extra administrative burdens on state-court personnel.   *Cf. Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.").

In addition, courts generally lack the authority to restrict access to the courts that sit in review of their decisions.   This court would have no power to enter an injunction that purports to restrain access to the Supreme Court.   Nor should district courts include appellate courts within their pre-filing injunctions absent the most compelling necessity.

In this case, the record does not support the exceptional remedy of a pre-filing injunction even within the courts of the D.C. Circuit, and so it necessarily falls far short of warranting the nationwide pre-filing injunction the district court entered.[4]

Courts, no doubt, have the power to prevent the harassment of litigants, and they should analyze the harassing nature of a litigant's filings by considering the effect of those filings on both the parties and the courts.   *See* FED. R. CIV. P.

---

[4] It is unclear what the district court's restriction on filings in "any other forum" meant to include.   To the extent the district court purported to constrain proceedings in the executive or legislative branches of government, that restriction would only compound the pre-filing injunction's constitutional tenuity.

11(c); *In re Powell*, 851 F.2d at 431; *In re Martin-Trigona*, 737 F.2d at 1262 ("[T]he United States Courts are not powerless to protect the public, including litigants[,] from the depredations of those who abuse the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings.") (formatting modified). The problem in this case is that the district court neither tried less drastic remedies first nor stayed within appropriate bounds when it entered a pre-filing injunction of such sweeping breadth. For those reasons, the pre-filing injunction is vacated.

## B

Klayman separately challenges the district court's dismissal of his damages claims, arguing that the ODC Employees are not absolutely immune from a suit for damages arising from their sending of *ex parte* letters to the bars in other jurisdictions.

Klayman is wrong. As he has been told before, absolute immunity shields the ODC Employees from his damages claims. *Klayman*, 830 F. App'x at 662; *see Simons v. Bellinger*, 643 F.2d 774, 777–785 (D.C. Cir. 1980); *In re Banks*, 805 A.2d 990, 1001 (D.C. 2002) (applying *Simons* to claims arising under D.C. law); D.C. Bar Rule XI, § 19(a).[5]

---

[5] Klayman asserts that Texas substantive law governs the actions he filed in the U.S. District Courts for the Western and Northern Districts of Texas, while California substantive law governs the action he filed in the U.S. District Court for the Northern District of California. *See* Klayman Br. 32–36. He does not identify, however, any relevant differences between the substantive law of those jurisdictions and the common-law sources of immunity and District of Columbia Bar rule on which our prior cases rested. *See Klayman*, 830 F. App'x at 662; *Simons*, 643 F.2d at 777–785. Nor do there

"D.C. officials charged with disciplining individuals engaged in the unauthorized practice of law are 'entitled to the protection of absolute immunity.'" *Klayman*, 830 F. App'x at 662 (quoting *Simons*, 643 F.2d at 782); *see Simons*, 643 F.2d at 777–785; *In re Banks*, 805 A.2d at 1001; D.C. Bar Rule XI, § 19(a). This immunity extends to any activities that are "not manifestly beyond [the officials'] authority." *Simons*, 643 F.2d at 786.

Here, the ODC Employees' decision to send *ex parte* letters was not manifestly beyond their discretion in carrying out their official duties. The D.C. Bar Rules generally allow them to communicate with other jurisdictions about informal disciplinary matters. *See* D.C. Bar Rule XI, § 17(c) ("Disciplinary Counsel may disclose information pertaining to proceedings resulting in informal admonitions to any court[.]"). The ODC Employees' judgment that they equally have the authority to inform other jurisdictions about formal

appear to be any relevant differences in the provision of absolute immunity. *Compare* D.C. Bar Rule XI, § 19(a) ("Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring shall be immune from * * * civil suit for any conduct in the course of their official duties."), *and Simons*, 643 F.2d at 777–785 (applying common-law immunity doctrines), *with* CAL. BUS. & PROF. CODE § 6079.1(g) ("[A]ny employee of the State Bar assigned to the State Bar Court shall have the same immunity that attaches to judges in judicial proceedings in this state."), *and* TEX. R. DISC. PROC. 17.09 ("[A]ll officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties."). Klayman thus has not shown that the choice-of-law question has any effect on the outcome of this case.

charges was the type of decision that is not manifestly beyond their discretion. Indeed, the American Bar Association Model Rules for Lawyer Disciplinary Enforcement contemplate that disciplinary proceedings will result in notice letters like those the ODC Employees sent. *See* MODEL RULES FOR LAW. DISCIPLINARY ENF'T r. 22 cmt. (AM. BAR ASS'N 2002) ("If a lawyer suspended or disbarred in one jurisdiction is also admitted in another jurisdiction[,] * * * [d]isciplinary counsel in the forum jurisdiction should be notified by disciplinary counsel of the jurisdiction where the original discipline or disability inactive status was imposed."); *cf.* D.C. Bar Rule XI, § 11(b) ("It shall be the duty of Disciplinary Counsel to obtain copies of all orders of discipline from other disciplining courts.").

Because the ODC Employees are absolutely immune from Klayman's damages claims, the district court properly dismissed them.

## C

Finally, Klayman argues that the district court erred by dismissing his claims for injunctive relief under the *Younger* abstention doctrine. *See* Klayman Br. 44–46. "Federal-court abstention from interference with pending state proceedings (including D.C. proceedings) is appropriate" if "'there is no showing of bad faith, harassment, or some other extraordinary circumstance' on the part of the state 'that would make abstention inappropriate.'" *Klayman*, 830 F. App'x at 662 (quoting *Middlesex County Ethics Comm.*, 457 U.S. at 435). Klayman argues that abstention was not appropriate because the disciplinary proceedings at issue and related *ex parte* letters were retaliatory and in bad faith. *See* Klayman Br. 44–46.

Klayman points to no factual support in the record for his assertions of bad faith or retaliation. Nonetheless, *Younger* abstention was not warranted in this case for the straightforward reason that there was no relevant pending state proceeding at the time of the district court's decision. The disciplinary proceeding resulting in the ninety-day suspension order concluded on June 11, 2020. *See In re Klayman*, 228 A.3d at 713. And Klayman did not bring his lawsuits until *after* the ODC Employees began sending notification letters regarding that suspension to other jurisdictions. By that time, all D.C. court proceedings and actions relevant to the consolidated cases before the district court had concluded. Accordingly, there was no relevant "ongoing" state proceeding that could provide a predicate for *Younger* abstention at the time the district court ruled. *Middlesex County Ethics Comm.*, 457 U.S. at 437.[6]

For that reason, we reverse the district court's dismissal of Klayman's claims for injunctive relief as to all of the ODC Employees other than Kaiser. We affirm the district court's dismissal of Klayman's claims for injunctive relief against Kaiser on mootness grounds because Kaiser no longer serves on the Board. *See* ODC Employees Br. 5 n.1; *Meza v. Renaud*,

---

[6] The ODC Employees state that they have now provided Klayman with copies of the letters, a point Klayman appears to dispute. *Compare* ODC Employees' Letter Pursuant to FRAP 28j Advising of Additional Authorities (Dec. 4, 2023), *with* Klayman Response to ODC Employees' Letter Pursuant to FRAP 28j Advising of Additional Authorities (Dec. 4, 2023). On remand, the district court will have to determine whether any of Klayman's requests for injunctive relief remain live. *Cf. Drake v. Federal Aviation Admin.*, 291 F.3d 59, 62 (D.C. Cir. 2002) (finding FOIA litigant's requests for information moot "because he ha[d] received all the documents to which he [wa]s entitled").

9 F.4th 930, 933 (D.C. Cir. 2021) ("On *de novo* review, we generally may affirm on any ground supported by the record.").

**IV**

For the foregoing reasons, we vacate the district court's pre-filing injunction, affirm the district court's dismissal of Klayman's damages claims, and reverse the district court's dismissal of Klayman's claims for injunctive relief as to all of the ODC Employees except Kaiser. We remand to the district court for further proceedings on those injunctive-relief claims.

*So ordered.*

RAO, *Circuit Judge*, concurring: I join the court's opinion in full but write separately to highlight an open question about the choice of law governing the D.C. Bar officials' immunity from these tortious interference and abuse of process claims.

While courts have held these officials are immune from District law tort claims, they have not explained the applicable law.[1] *See In re Banks*, 805 A.2d 990, 1001 (D.C. 2002); *Klayman v. Lim*, 830 F. App'x 660, 662 (D.C. Cir. 2020). In previous cases, as in this one, the officials would be immune under either federal or District law, making it unnecessary to decide which law applies. *See* Op. 22 n.5. But in a future case, in which the choice of law matters, the court would need to decide. The choice of law question turns on the extent of federal control over the D.C. Bar officials.

If the D.C. Bar officials are federal officials, their immunity from District law claims would be governed by federal law. *See Martin v. Malhoyt*, 830 F.2d 237, 244–45, 252–53 (D.C. Cir. 1987); *cf. Howard v. Lyons*, 360 U.S. 593, 597 (1959). When determining whether officials serving in the District of Columbia are federal or District officials for other purposes, we consider who establishes the offices and controls the officials: the federal government through Congress and the President, or the local D.C. government through the D.C. Council and Mayor. *See, e.g.*, *Close v. United States*, 397 F.2d 686, 687 & n.1 (D.C. Cir. 1968) (per curiam) (discussing "federal control" when applying the Federal Tort Claims Act's definition of "Federal Agency"); *Cannon v. United States*, 645 F.2d 1128, 1140–42 (D.C. Cir. 1981) (narrowing *Close* but

---

[1] *Simons v. Bellinger*, our leading case on D.C. Bar officials' immunity, involved only federal law claims, immunity from which is governed by federal law. 643 F.2d 774, 776–85 (D.C. Cir. 1980) (relying on federal law immunity precedents without expressly stating the choice of law).

continuing to focus on whether the federal government has "physical control"). For instance, in *Johnson v. District of Columbia*, we concluded that the Superior Court Marshal was a federal official because Congress created his office, the President appointed him with the advice and consent of the Senate, and federal officials supervised his work. 734 F.3d 1194, 1199–1200 (D.C. Cir. 2013).

Because of the federal government's extensive control over the D.C. courts, which in turn control the D.C. Bar, the D.C. Bar officials may be federal officials. Congress created the D.C. Court of Appeals, an Article I court, and instructed it to oversee D.C. Bar membership and discipline.[2] *Palmore v. United States*, 411 U.S. 389, 407 (1973); District of Columbia Court Reorganization Act of 1970 ("1970 Act"), Pub. L. No. 91-358, § 111, 84 Stat. 473, 475, 521 (codified at D.C. CODE §§ 11-101(2), -2501 to -2503). Congress prohibits the D.C. Council from modifying these provisions or any other part of Title 11 of the D.C. Code, which governs the D.C. courts. *See* District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, § 602(a)(4), 87 Stat. 774, 813 (1973) (codified as amended at D.C. CODE § 1-206.02(a)(4)).

The Article I judges serving on the D.C. Court of Appeals are nominated by the President and confirmed by the Senate. 1970 Act, 84 Stat. at 491. The D.C. Bar officials serve in offices created by an Article I court, are supervised by that court, and

---

[2] The district court and D.C. Bar officials erroneously attributed a key statutory provision, D.C. Code § 11-2501(a), to the D.C. Council when it was, in fact, enacted by Congress. *Compare* District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, § 111, 84 Stat. 473, 521, *with Klayman v. Porter*, 2022 WL 3715775, at *10 (D.D.C. Aug. 29, 2022), *and* D.C. Bar Officials Br. 40–41.

carry out responsibilities established by federal law. *See* D.C. Bar Rule XI. By contrast, the D.C. Council and Mayor have a negligible role, if any, in the activities of D.C. Bar officials.

In a case in which the scope of immunity varies between federal and District law, the court should decide whether the D.C. Bar officials are federal officials whose immunity is governed by federal law.